## ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY v. THOMAS WOOLUM.

### No. 7267.

1. **Affidavit for First Continuance — Due Diligence.** — An affidavit for first continuance although stating statutory diligence is not a compliance with the statute when not stating that *due diligence* had been used. With such omission the granting of the application is subject to the discretion of the court.

2. **First Continuance Properly Refused.**—Affidavit showing statutory diligence in having three witnesses, residents of the county seat, duly subpœnaed. Their testimony was alleged to be material and they were absent. It appeared that all three resided but a short distance from the court house, and two were in employ and under control of the applicant, the railway company. The one not in its employ appeared and testified on the trial. The plaintiff produced one of the others, but the defendant declined to examine him. *Held*, there was no error in refusing the continuance.

3. **Verdict Not Excessive.**—See facts supporting a verdict for $4000 for permanent bodily injuries, breaking both bones of the right ankle joint.

APPEAL from Lamar. Tried below before Hon. E. D. McCLELLAN. No statement is necessary.

*E. D. Kenna* and *M. R. Smith*, for appellant.—1. The continuance should have been granted, as the affidavit set forth facts sufficient to show due diligence upon the part of the defendant to obtain the presence of the witness Frank Hill, and this was all the statute requires. Sayles' Civ. Stats., art. 1277; McMahan v. Busby, 29 Texas, 191; Railway v. Mallon, 65 Texas, 116; Railway v. Aiken, 71 Texas, 377; Bryce v. Jones, 38 Texas, 205; Hyde v. State, 16 Texas, 446.

2. Defendant's motion for a new trial should have been sustained, for the reason that the court erroneously charged the jury as to the law. Sayles' Civ. Stats., art. 1317; Hays v. Hays, 66 Texas, 609; Traylor v. Townsend, 61 Texas, 144; Willis & Bro. v. McNeill, 57 Texas, 465; Stokes v. Saltonstall, 13 Pet., 181; Stone v. Hubbardstone, 100 Mass., 49; 2 Wood on Rys., p. 1261; 2 Thomp. on Neg., sec. 8; Johnson v. Railway, 70 Pa. St., 357.

3. Defendant's motion for a new trial should have been sustained, for the reason that the verdict of the jury was excessive. Railway v.

Cole, 66 Texas, 565; Breen v. Railway, 50 Texas, 43–48; Railway v. Ford, 53 Texas, 364–372; 1 Suth. on Dam., p. 810, and authorities cited to note 4; Garrett v. Greenwell, 92 Mo., 125.

A new trial should have been granted. Chandler v. Meckling, 22 Texas, 44; Bank v. Armstrong, 92 Mo., 280.

*Dudley & Moore*, for appellee.—1. When the appellant failed and refused to make the statutory showing for a continuance, it was not entitled to a continuance as a matter of right. The court could have granted it in his discretion or refused it, as he did, and the overruling of such application was not an abuse of this discretion, when the witnesses for whose testimony the continuance was sought were shown to be at that time near the court house, in the employ of and at work for the appellant. Rev. Stats., art. 1277; Brown v. Bank, 70 Texas, 750; Railway v. Aiken, 71 Texas, 377; Railway v. Gage, 63 Texas, 574; Allyn & Co. v. Willis & Bro., 65 Texas, 65; Railway v. Hardin, 62 Texas, 367; Campion v. Angier, 16 Texas, 93; Fowler v. Buckner, 23 Texas, 84; Harrison v. Cotton, 25 Texas, 54; Hyde v. The State, 16 Texas, 445; Brice v. Jones, 38 Texas, 205.

2. To warrant this court to set aside the verdict in this case on the ground that it is excessive, the damages found by the jury must appear to the court to be so clearly excessive as to manifest that the jury were actuated by passion or prejudice in assessing the same. Railway v. Randall, 50 Texas, 256; Railway v. O'Donnell, 58 Texas, 42; City of Galveston v. Posnainsky, 62 Texas, 135; Railway v. Hardin, 62 Texas, 367; Railway v. Silliphant, 70 Texas, 623; Brown v. Sullivan, 71 Texas, 470; Railway v. Smith, 65 Texas, 173.

COLLARD, JUDGE, *Section A.*—Suit by appellee Woolum, against appellant St. Louis & San Francisco Railway Company, for damages for injuries received while in the discharge of his duties as brakeman in the employ of defendant.

Plaintiff was on a car which with others had been put in motion and cut from the engine, and were to be delivered to the Pacific Railway Company—all in the city of Paris, Texas. When the car plaintiff was on reached the crossing on the Santa Fe railway, because of a defect in the crossing it jumped the track. Plaintiff was tripped off, and fell about fifteen feet, breaking both bones of his right leg at the ankle joint, causing a permanent injury, attended with long suffering, and making him a cripple for life. The accident occurred on the 28th day of August, 1887. Suit was brought the 10th of August, 1888. The cause was tried on the 17th day of April, 1889, and resulted in a verdict and judgment for plaintiff for $4000, from which defendant has appealed and assigned errors.

The first assignment is, that the court erred in overruling the defendant's application for a continuance on account of the absence of the witness Frank Hill, who had been duly subpœnaed to testify on behalf of defendant, to which action of the court defendant excepted.

The bill of exceptions shows, that the case was not reached in its order on the trial docket until the 17th of April, 1889, though it had been set for trial by consent of parties on the 16th.   Plaintiff announced ready and defendant not ready, and after being allowed an hour and a half to prepare a written motion for a continuance, presented the following as grounds for a continuance:   "For the absence of Dr. W. E. Dailey, J. C. Crow, and Frank Hill, all of whom reside in Lamar County, Texas.   That the testimony of said witnesses and each of them is material to the defense in this cause.   Defendant says, that said witnesses have been duly subpœnaed to appear and testify in this cause, to-wit, on the 4th day of April, 1889, which subpœna, issued by the clerk and returned by the sheriff, is hereby referred to and made a part of this motion."   The bill of exceptions then proceeds:   "Which application was sworn to by A. P. Park, attorney for defendant.   The subpœna referred to in the application was issued on the 26th of March, 1889, requiring the witnesses to appear in this cause on the 8th of April, 1889, the day the jury docket was to be taken up, and was served on the witnesses on the 4th day of April, 1889.   Dr. Dailey had been subpœnaed in this cause by defendant prior to this, to-wit, on the 11th day of October, 1888, to appear on the 29th day of October, 1888, and Crow had been subpœnaed to appear on the 5th of October, 1888.   The affidavit did not state that defendant had used due diligence to procure the testimony of the witnesses, and defendant's attorney refused to insert such statement in the application when his attention was called to it, claiming that it was unnecessary, because the diligence used had been stated, and it was not shown in the application that the witnesses Dailey and Crow had not disobeyed the former subpœna; neither was it shown that any of the witnesses had ever been in attendance upon the court. The deposition of witness Crow, taken at the instance of plaintiff, was on file among the papers of this cause, and was afterward read in evidence on the trial.   It was shown to the court by affidavit that the witness Dailey was then at his office, within three blocks of the court house, in the city of Paris; that the witnesses Crow and Hill were then each in the employ of the defendant and under its control, and that the said witnesses were then in the city of Paris at work for defendant, a short distance from the court house.   This was the first application for a continuance by the defendant, the case having been continued by the court at the October term, 1888.   The court overruled the application and compelled the defendant to go to trial.   The trial proceeded, and the witness Dr. Dailey came into court and was introduced by the defendant as a witness, and testified in the cause.   The witness Crow was

brought into court by plaintiff and offered to defendant, and defendant declined to put him on the stand."

The overruling of the application to continue was correct. The statute requires, that on the first application for a continuance the party applying therefor shall make affidavit, among other things, that he has used due diligence to procure the testimony of absent witnesses, stating the diligence used. It is not sufficient to state the diligence without also stating that it was due or sufficient diligence. The party may be able to state that statutory diligence was used, and yet, as in this case, refuse to swear that it was sufficient. Facts may exist within the knowledge of the affiant that would restrain him from making oath that due diligence had been used, when he could promptly swear that the ordinary statutory diligence had been used. It would not be required that such facts be specifically negatived in the first application as in the second, and yet they would be denied by the general affirmation that due diligence had been used. Rev. Stats., arts. 1276, 1277. The refusal of the party to make oath to the fact in this case illustrates the meaning of the statute. Brown v. Bank, 70 Texas, 750; Railway v. Aiken, 71 Texas, 377. The failure and refusal of the attorney to make the statutory oath left the matter of continuance to the sound discretion of the court. The information received by the court by affidavit not objected to, that the witness Hill was near the court house, in the employ and under the control of defendant, and could be had before the court in a few minutes, justified the court's ruling. The attitude of the case as it then appeared to him makes it clear to us that he did not exercise his discretion improperly. Railway v. Gage, 63 Texas, 568; Baldessore v. Stephanes, 27 Texas, 455.

The only other assignment of error is, that "the court erred in overruling defendant's motion for a new trial on the grounds stated therein, and the verdict of the jury was excessive."

Except that the verdict is excessive, the assignment is too general to be considered, as has often been decided by the Supreme Court of this State.

Plaintiff at the time of the injury was 29 years old, was then receiving for his labor $2.10 per day, and was stout and healthy. He testified, that he "suffered most excruciating pain, and continued to suffer a great deal for some weeks." He says: "I was confined to my bed about four weeks, and then was able to walk around on crutches for about one month. After that I could not walk without crutches, but was forced to use crutch and stick. My ankle has not yet recovered or gotten well. I can not now walk without the aid of a stick. The ankle is enlarged and the ankle bone sticks over out of place about one inch, and now pains me nearly all the time; especially does it pain me in cloudy weather and when I am on my feet. * * * I am a cripple for life." He paid two of the physicians that attended him,

and supposed that defendant paid Dr. Dailey, who was the defendant's surgeon. He paid out considerable money for medicines and medical treatment.

Dr. Jones testified for defendant, that it was a bad break. His ankle at the joint was broken—both bones broken. It was a bad fracture. A fracture of that kind is very serious, and is the most difficult that surgeons have to contend with. He says: "I did not see plaintiff or examine his ankle any more (after his first visit) until to-day. I examined the ankle to-day, and find that it is enlarged, and the ankle is not a sound ankle by any means. The ankle bone at the joint projects out nearly an inch. In my opinion the ankle will never be well or strong again. The least twist will cause it to be very painful. In my opinion the injury is permanent; the plaintiff will always be a cripple. He has not the proper use of his ankle joint, and never will have."

Dr. Dailey, testifying for defendant, was called to see plaintiff the day after the injury. Says he was suffering some, but resting as easy as could be expected under the circumstances: "I found that his leg was broken at the ankle joint; both bones were broken. It was a bad break. I removed the temporary dressing put on by Dr. Jones and put on a plaster of paris cast. I saw him several times after that. I think the bones were properly set and plaintiff's leg knitted together nicely." He says plaintiff was able to walk on crutches in about four weeks. "I considered the break a bad break and one very hard to properly set. After he had worn the plaster of paris cast about two weeks I told him to take it off, and sent him word to be sure and do so, as the weight of the same might produce fever in the wounded joint. Plaintiff was away from Paris about two weeks and came back. I saw that he still had on the dressing. I examined his leg, pulled off the cast, and found that his ankle had gotten, as I thought, all right. The witness examined the ankle before the jury, and said: "I find on examination that the ankle is enlarged; there is a considerable enlargement just to the right of the foot at the top of the foot at the ankle joint. The movement of the ankle appears to be tolerably good. I don't call this (the broken ankle) a perfect ankle, but considering the character of the fracture, I think the broken limb has healed well. A fracture in the joint is very difficult to deal with. Plaintiff's injury, was a bad injury, no doubt about it, and it never will be a good ankle. Plaintiff suffered a great deal."

The verdict is supported by the evidence, is not manifestly excessive, and an appellate court should not set it aside.

We find no error as assigned, and conclude that the judgment should be affirmed.

*Affirmed.*

Adopted May 10, 1892.