CARVER BROS. v. MERRETT et al.

(Court of Civil Appeals of Texas. Texarkana. March 26, 1913. On Motion for Rehearing, April 3, 1913.)

1. VENUE (§ 27*)—PRIVILEGE—FRAUD.
A plea of privilege because the evidence showed that the transfer of the account sued upon to the plaintiff was fraudulent should be sustained.
[Ed. Note.—For other cases, see Venue, Cent. Dig. § 41; Dec. Dig. § 27.*]

2. VENUE (§ 32*)—PRIVILEGE—WAIVER.
By filing a cross-action and seeking a judgment against their codefendant for more than the sum sued for, defendants waived any rights under a plea of privilege.
[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 47–50; Dec. Dig. § 32.*]

3. APPEAL AND ERROR (§ 743*)—ASSIGNMENTS OF ERROR—CONTINUANCE.
Upon an assignment that the court erred in overruling defendants' motion for a continuance for want of the testimony of two named witnesses and of other witnesses named in their application, the appellate court will not search the record to ascertain all the witnesses mentioned in the application, but will consider the motion only with reference to the two named witnesses.
[Ed. Note.—For other cases, see Appeal and Error, Cent.Dig. §§ 2999, 3011; Dec.Dig. § 743.*]

4. APPEAL AND ERROR (§ 966*)—CONTINUANCE (§ 7*)—REVIEW—DISCRETION OF TRIAL COURT.
Where the statutory averment of due diligence to procure testimony of absent witnesses is omitted from the affidavit for a continuance, the granting thereof is left to the discretion of the trial judge, and his refusal will not be reviewed, except when it appeared that he has abused that discretion.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3837; Dec. Dig. § 966;* Continuance, Cent.Dig. §§ 17, 18; Dec.Dig. § 7.*]

5. CONTINUANCE (§ 37*)—APPLICATION—OBTAINING TESTIMONY BY NEXT TERM.
An application for a continuance on the ground of absent witnesses, failing to state that the applicant expected to procure such testimony by the next term of the court, was defective.
[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 117–121, 127; Dec. Dig. § 37.*]

On Motion for Rehearing.

6. PLEDGES (§ 26*) — DISCHARGE OF DEBT — RIGHT TO PROPERTY.
The pledgor of cotton tickets as collateral security for advances could not demand their surrender until the debt had been paid or payment tendered.
[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 64–66; Dec. Dig. § 26.*]

7. PLEDGES (§ 55*)—GROUNDS—LOSS OF COLLATERAL SECURITY.
Damages to the pledgor of cotton tickets as collateral security for advances made resulting from their loss by the pledgee may be pleaded by way of set-off in the pledgee's action for such advances.
[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 140–151; Dec. Dig. § 55.*]

8. PLEDGES (§ 55*) — PLEADING — SPECIAL PLEA.
The defense of damages from the loss of collateral security set up in an action on the debt is the set-off of one cause of action against another, and must be specially pleaded.
[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 140–151; Dec. Dig. § 55.*]

9. CONTINUANCE (§ 14*)—GROUNDS—ABSENCE OF WITNESSES.
Where the amended petition in an action to recover advances secured by cotton tickets and the amended answer setting up a claim for damages for loss of such tickets involved the issue of their disappearance, charged to defendants' agent, defendants' motion for a continuance on the ground of absent witnesses who would testify as to their loss should have been granted.
[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 25, 99–112; Dec. Dig. § 14.*]

10. JUDGMENT (§ 719*) — CONCLUSIVENESS — SCOPE OF PLEADINGS.
In determining the question of res adjudicata, the court should look to both counts of the petition on which judgment was rendered.
[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1249, 1250; Dec. Dig. § 719.*]

Appeal from District Court, Titus County; P. A. Turner, Judge.

Action by John Merrett against Carver Bros. and the Merchants' & Planters' National Bank of Mt. Pleasant. Judgment for plaintiff Merrett and for the bank against Carver Bros., and they appeal. Reversed and remanded for new trial.

S. P. Pounders and J. M. Burford, both of Mt. Pleasant, for appellants. L. E. Keeney and T. C. Hutchings, both of Mt. Pleasant, and Mahaffey, Thomas & Hughes, of Texarkana, for appellees.

HODGES, J. On March 5, 1912, the appellees filed this suit against the appellants, Carver Bros., a partnership firm consisting of W. I. Carver, Walter Carver, and Jack Carver, and against the Merchants' & Planters' National Bank of Mt. Pleasant, seeking a judgment for the sum of $1,773.39 claimed to be due for money loaned or advanced to Carver Bros. by the bank. The petition al-

leged that in September, 1911, a contract was entered into between Carver Bros. and the bank, by which the latter agreed to pay for cotton purchased by Carver Bros. with tickets attached, and that Carver Bros. agreed to repay such advances, together with 10 per cent. interest per annum and other necessary charges; that during that season the bank advanced to Carver Bros., in the manner specified $67,419.77, of which sum Carver Bros. had repaid $65,646.38, leaving a balance of $1,773.39 still due the bank. An itemized statement of the number of bales of cotton purchased and the amounts advanced thereon, together with the credits to which Carver Bros. were entitled, was attached as an exhibit to the petition. It is also alleged that for a valuable consideration this account against Carver Bros. was transferred by the bank to the appellee John Merrett, and its payment guaranteed. On the 19th day of March, 1912, appellants appear to have filed a plea of privilege, claiming the right to be sued in the county of their residence. On the 23d of the same month appellee filed an amended original petition, alleging, in addition to the facts before stated, the following: "Plaintiff further shows to the court that heretofore, on the 29th day of November, 1911, said defendant bank held as collateral and as a pledge to secure the payment of the above account as shown by said exhibit 44 bales of lint cotton, weighing 500 pounds each of the value of 9 cents per pound and of the value of $45 per bale and of the total value of $1,895, that said 44 bales of cotton was represented by cotton tickets issued by Isham Hammonds and L. E. Culver, said cotton being the property of said Carver Bros. and having been paid for by said defendant bank, and being held by said Hammonds and Culver for said Carver Bros., subject to defendant bank's rights by virtue of said pledge, said cotton tickets being in the possession of said bank and being held by it as collateral to secure said debt. Plaintiff says that on the 29th day of November, 1911, in Titus county, Tex., said Carver Bros. by and through their agent and representative, J. W. Pierce, came into possession of said 44 cotton tickets, 44 bales of cotton, which tickets were the representatives of said 44 bales of cotton, and that said J. W. Pierce at the time he came into possession of said cotton tickets and cotton was acting in the scope and apparent scope of his authority, and acting in the course of his employment, and after getting possession of said tickets and cotton appropriated and converted said cotton and cotton tickets, to said bank's damage in the [sum of] $1,773.39; said cotton tickets and cotton being converted by the said J. W. Pierce as aforesaid in Titus county, Tex., and without the consent of said bank." On the same date appellants filed an amended plea of privilege, alleging that their residence was in Collin county, Tex., and charging that the transfer of the account sued on was fraudulent and simulated for the sole purpose of conferring jurisdiction over the persons of the appellants on the district court of Titus county. The appellee replied by a proper denial. The issue presented by the plea of privilege appears to have been submitted to the court on the same date and overruled. Appellants then filed an answer containing general and special exceptions and a general denial, and specially pleading that they had been damaged by the loss of a number of the tickets and cotton corresponding thereto which had been placed in the custody of the bank, and asked for a judgment over against the bank for $121.61. Thereafter, on the 30th of the same month, the case on its merits was submitted to the court, and a judgment was rendered for the appellee for the full amount sued for, and in favor of the bank against Carver Bros. for the same sum.

[1] It is claimed in this appeal that the court erred in refusing to sustain the appellants' plea of privilege because the evidence shows that the transfer to the appellee from the bank was simulated and fraudulent. It may be conceded that this contention is correct.

[2] Still there would exist no good reason, as the record now stands, for reversing this cause upon that ground. By filing their cross-action and seeking a judgment against their codefendant for more than the sum sued for the appellants waived whatever legal rights had been claimed in the plea of privilege. Ramsey v. Cook, 151 S. W. 346; Thorndale v. Evens & Lee, 146 S. W. 1053; Kolp v. Shrader, 131 S. W. 860.

[3] Before going into a trial upon the merits, appellants had filed an application for a continuance of the cause on account of the absence of several witnesses; and it is contended that the court erred in refusing to grant that continuance. The assignment as it appears in the appellants' brief is as follows: "The court erred in overruling defendants' motion for a continuance until the next term of this court for the want of the testimony of J. M. Badt and J. W. Pierce and other witnesses named in their application, as is complained of in the third paragraph of their motion for a new trial, and as is fully set out in their bill of exception No. 3." The proposition following that assignment is: "An application for a continuance to procure witnesses to disprove an allegation made in the amended petition for the first time on the day of trial should be granted as a matter of law." We are not required to search the record and ascertain all the witnesses mentioned in the motion for a continuance, or what the appellants expected to prove by them. We shall only consider the motion with reference to the two witnesses whose names are designated in the assignment of error—J. M. Badt and J. W. Pierce.

[4] The motion was not in the statutory form required for the first application for a

continuance. The affidavit failed to state that due diligence had been used to procure the testimony of the absent witnesses. When this averment is omitted from the affidavit, the granting of the motion will be left to the discretion of the trial judge, and his refusal will not be revised except when it appears that he has abused that discretion. St. L. & S. F. Ry. Co. v. Woolum, 84 Tex. 570, 19 S. W. 782; Hogan v. Railway Co., 88 Tex. 682, 32 S. W. 1035; Lion Ins. Co. v. Wicker, 54 S. W. 294.

[5] The application was also defective in failing to state that the applicants expected to procure the testimony of the absent witnesses by the next term of the court. T. & P. Ry. Co. v. Hardin, 62 Tex. 367; Railway Co. v. Wells, 142 S. W. 670; Doxey v. Westbrook, 62 S. W. 787. We do not think it can be said that the trial judge abused his discretion in this instance in refusing to continue on account of the absence of the witnesses mentioned.

The facts proved on the trial show that in September, 1911, Carver Bros. addressed the following letter to the cashier of the Merchants' & Planters' National Bank of Mt. Pleasant: "Dear Sir: This will introduce to you Mr. J. W. Pierce, who will represent us in your city, and we hope he will be able to buy some cotton on the streets for us, and we will like for you to pay for cotton bought by him for us with tickets attached for us and we will ship out and give you exchange on either Sulphur Springs, or Pittsburg. We do not know whether it is your custom or not to figure the tickets on street cotton for the buyer. If you will do this we will appreciate it, and it will also help Mr. Pierce. Any favors shown him will be greatly appreciated by us." That letter was presented to the bank, and the proposal accepted. Pierce then began buying cotton for the appellants, and during the season purchased a large number of bales, all of which seem to have been paid for by the bank. Pierce had no interest in the cotton, and received for his services 25 cents per bale from Carver Bros. In buying cotton his custom was to give to the seller a slip of paper, or ticket, on which was noted the weight, price paid, and the weigher's number. He also noted the letters "O. K.," and signed his initials. These slips were presented to the bank by the seller, and the amount called for paid and charged to Carver Bros. The tickets were filed by the bank as any other commercial paper, and held as collateral security for the money advanced. It was Pierce's duty at stated intervals to make reports to his employers of the amount and quality of cotton bought by him. He was also expected to ship out certain quantities and grades of cotton as directed by his employers. For the purpose of performing these duties he was given access to the tickets held by the bank. He used them in making up his invoices to be sent to his employers, and was also permitted to use them in making out his shipping lists; and, for the purpose of obtaining the bales from the weigher, was allowed to withdraw the tickets corresponding to the cotton he desired to ship. When shipped, he would deliver to the bank in lieu of the tickets taken out the bills of lading. These were attached to drafts upon the purchaser, and in that way the bank was reimbursed for the advances made. This manner of doing business continued until some time in December, when, for some reason not fully disclosed by the record, Pierce quit the service of the appellants and was succeeded by G. C. Walter. Walter, in behalf of the appellants, in connection with the officers of the bank, checked up the number of tickets which the bank had on hand, and found that 44 of them were missing. At the end of the cotton season the bank's books showed that Carver Bros. owed it the amount sued for. This account was transferred to the appellee by the bank, and its payment guaranteed. Upon the refusal of Carver Bros. to pay the sum claimed this suit was filed. The evidence indicated that Pierce had appropriated the tickets. Testimony was introduced by the bank showing that none of the employés who had access to the tickets had appropriated any of them. There was also testimony tending to show that the officers of the bank exercised proper care to safely keep the tickets, and that no person had an opportunity to appropriate them except Pierce. The record justifies the inference that Carver Bros. refused to pay this balance on account of the failure of the bank to produce the tickets corresponding to the advances claimed. There was no evidence that Carver Bros. did not get all the cotton paid for by the bank. Although the original petition first filed did not charge that Pierce had converted the tickets as was alleged in the amendment, the controversy pending between the parties, and the purpose of the suit, was sufficient to put Carver Bros. upon notice that Pierce's connection with the disappearance of the tickets would be an important issue in the case, and that his testimony would be material. They could not claim the right to wait until the filing of this amended original petition before assuming that Pierce's evidence would be needed. The introduction of that portion of the amended original petition which alleged a conversion by Pierce for and in behalf of his employers was, in substance, a different mode of stating the same cause of action. The suit was one to recover the amount of money advanced by the bank for Carver Bros. in the purchase of cotton. The tickets were merely collateral security held to secure those advances.

The court heard all of the testimony and overruled the motion for a new trial. He had a right, if he saw fit under the evidence,

to render a judgment in favor of the appellee upon the cause of action as stated in the first petition filed, and which was repeated in the amendment. It will be assumed that he did this, and that he considered the testimony of Pierce and Badt with reference to the merits of the controversy as immaterial.

Appellants also object to the testimony of two other witnesses upon the ground that it was immaterial and irrelevant. The case having been tried by the court, it will be presumed that he considered in the determination of the issues involved only testimony which was legally relevant and material.

The evidence, we think, amply justified the judgment rendered, and it will be affirmed.

## On Motion for Rehearing.

As originally filed, this suit was one merely to recover a sum of money advanced by the bank to Carver Bros. and used by them in purchasing cotton. So far as the pleadings disclose, this was the only issue then presented. Had the parties gone to trial on that state of the pleadings, a prima facie case could have been made out by the plaintiffs by the introduction of any competent evidence showing the money advanced or loaned, and what amount had not been repaid. The books of the bank would doubtless have been sufficient for that purpose.

[6] The tickets deposited with the bank were held as collateral security representing the cotton in the actual custody of the warehouseman. It would not have been necessary to produce those tickets, or to account for their loss, in order to entitle the plaintiffs to a judgment. Not until the debt was paid, or payment tendered, could their surrender be demanded. Jones on Pledges and Collateral Securities, §§ 577, 594. As the pleadings were then framed, it was not important for either party to have the testimony of any witness solely for the purpose of showing what had become of the tickets, or that they had not been abstracted by an agent of Carver Bros. This loss might or might not be accompanied by damage to Carver Bros. Such consequences would depend upon the effect this loss would have upon the ownership and right to the possession of the cotton which the tickets represented.

[7] In any event, damages resulting from such loss might be pleaded by way of set-off against the debt for which the securities were pledged. Marberry v. Bank, 6 Tex. Civ. App. 607, 26 S. W. 215; Jones on Pledges and Collateral Securities, § 577.

[8] But such a defense involves the setting off of one cause of action against another, and must be specially pleaded in order to be available. When Carver Bros. filed their amended answer this requirement was met, and they should have been allowed time to procure the attendance of witnesses necessary to establish the facts alleged.

[9, 10] Not only was this issue presented upon the filing of the amended answer by Carver Bros., but it was also involved in the amendment filed by the appellees to their original petition in which the loss of the tickets was alleged and their disappearance charged to Pierce, the agent of Carver Bros. That amendment called upon the appellants to meet that issue. A general judgment for the plaintiffs in the present state of the pleadings would be a bar to any subsequent suit by Carver Bros. for any damage occasioned by the loss of the tickets. While the court in rendering his judgment may have considered only one count of the amended petition, yet both counts would be looked to in afterwards determining the question of res adjudicata. We have concluded, therefore, that the trial court should have granted the appellants' motion to continue for the witnesses named.

The judgment affirming this case will be set aside, the motion for a rehearing granted, and the judgment of the district court reversed, and the cause remanded for a new trial.