GALVESTON, H. & S. A. RY. CO. et al. v. HARRIS BROS. (No. 6039.)

(Court of Civil Appeals of Texas. Austin. March 5, 1919. Rehearing Denied April 16, 1919.)

1. CONTINUANCE ⬅22—ABSENCE OF WITNESS—DISCRETION OF COURT.

Where a motion for continuance was based upon the absence of a material witness, and was in form and manner in compliance with the statutory requirements, the question of granting or overruling the motion was a matter within the sound discretion of the trial court.

2. CONTINUANCE ⬅26(12)—DILIGENCE—DELAY IN PROCURING DEPOSITION.

The statute on continuance requires not only that due diligence be alleged in motion, but that it be shown, and where it is apparent that the applicant was not duly diligent in ascertaining what witness' answers in his deposition would be and in securing the deposition, denial of continuance was not an abuse of discretion.

3. CONTINUANCE ⬅25—ABSENCE OF WITNESSES—VALUE OF EVIDENCE—PREJUDICE.

It is not error to deny a continuance asked to secure the testimony of a witness which, if given, would contradict that of another of applicant's witnesses and be of no value.

4. DEPOSITIONS ⬅35—NOTICE OF APPLICATION — SUFFICIENCY — RESIDENCE OF WITNESS.

A notice of application for the commission to take depositions of witnesses reciting "who reside in the county of El Paso, in the state of Texas," when in fact one of them lived in Hudspeth county, and was then temporarily in El Paso county, held a substantial compliance with Rev. St. 1911, art. 3650.

5. TRIAL ⬅296(9) — INSTRUCTIONS — ASSUMING FACTS—CORRECTION BY OTHER INSTRUCTION.

In an action against a carrier for damages to live stock, instructions submitting special issues held not prejudicial to defendant because assuming the existence of facts stated therein in view of another instruction given at defendant's request.

6. APPEAL AND ERROR ⬅882(12)—INVITED ERROR—INSTRUCTIONS ASSUMING FACTS.

If an instruction given by the court for plaintiff is erroneous as assuming facts, it must be considered as invited error, where defendant offered an instruction which was given upon the same subject, and which is subject to the same criticism.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. CARRIERS ⬅➡230(4) — INJURY TO LIVE STOCK — INSTRUCTIONS — "NEGLIGENCE" — "ORDINARY CARE."**

In an action against a carrier for damages to shipment of cattle, the court's instruction that: " 'Negligence' means that failure to exercise ordinary care. 'Ordinary care' means the doing of that which an ordinarily prudent man would do under the same or similar circumstances or not doing that which under the same or similar circumstances an ordinarily prudent man would not do"—as applied to handling of stock, *held* substantially correct.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Negligence; Ordinary Care.]

**8. TRIAL ⬅➡352(5)—INSTRUCTION SUBMITTING SPECIAL ISSUES—ASSUMING FACTS.**

In an action against a carrier for damages to cattle, an instruction submitting a special issue as to whether the cattle died as a proximate result "of such negligence" was not erroneous in assuming negligence, where the jury were told not to answer the question unless they had found the carrier guilty of negligence in answering a previous question.

**9. APPEAL AND ERROR ⬅➡1050(1)—INJURIES TO SHIPMENT OF LIVE STOCK — EVIDENCE — ADMISSIBILITY.**

In an action to recover from a carrier damages to shipment of live stock, an assignment of error for reading from a deposition a statement that train crew attributed the rough handling of the train to inefficiency or lack of interest on the part of the engineer *held* not reversible error.

**10. APPEAL AND ERROR ⬅➡664(2) — ASSIGNMENTS—ADMISSION OF EVIDENCE—CONDITION OF RECORD.**

Where a bill of exceptions seems to show that a question and answer were read to the jury, but under the statement of facts approved by the court it appears that they were not read to the jury, the condition of the record does not require that an assignment of error in admitting the evidence be considered.

**11. APPEAL AND ERROR ⬅➡742(4) — ASSIGNMENT OF ERROR—PROPOSITION—EVIDENCE.**

An assignment of error complaining of the error in admitting interrogatory to witness and his answer thereto: "Q. If you have stated that cattle were roughly handled, * * * then state whether or not you complained about this. * * * A. I did complain of this to the conductor and the brakeman"—is not sustained by proposition that any statement made by the brakeman as to why the engineer was handling the train roughly would be an opinion of the witness.

**12. CARRIERS ⬅➡228(3)—DAMAGES TO LIVE STOCK—EVIDENCE AS TO HANDLING OF CARS — ADMISSIBILITY — REQUEST TO HANDLE WITH CARE.**

In an action against a carrier for damages to shipment of cattle, the testimony of a witness that he asked the conductor to see if it was possible to get the engineer to spot the cars with more care to save loss to owners was admissible.

**13. EVIDENCE ⬅➡121(13) — ADMISSIBILITY — RES GESTÆ.**

In an action against a carrier for damages to shipment of live stock, a witness' testimony that he asked conductor to see if he could get the engineer to handle the cars with more care and was told that anything the train crew said to the engineer seemed to make matters worse instead of better was admissible as part of the res gestæ.

**14. EVIDENCE ⬅➡481(3) — NONEXPERT WITNESS—QUALIFICATION—HANDLING OF CATTLE BY RAILROAD—CUSTOMARY MANNER OF SPOTTING CARS.**

In an action against a carrier for damages to a shipment of cattle resulting from rough handling in spotting cars, the testimony of witness that they were not spotted in the usual and customary manner was competent, where the witness testified that he had about 30 years' experience in raising, buying, selling, and shipping cattle, and had on numerous occasions observed shipments of cattle to the point in question as well as other points.

Appeal from District Court, Tom Green County; James Cornell, Judge.

Suit by Harris Bros. against the Kansas City, Mexican & Orient Railway Company of Texas and another. Judgment in favor of the defendant Kansas City, Mexican & Orient Railway Company of Texas and for the plaintiff against the Galveston, Harrisburg & San Antonio Railway Company, from which the latter appeals. Affirmed.

H. S. Garrett, of San Angelo, and Baker, Botts, Parker & Garwood and McMeans, Garrison & Pollard, all of Houston, for appellant.

Blanks, Collins & Jackson, of San Angelo, for appellees.

BRADY, J. Appellees brought this suit against Kansas City, Mexican & Orient Railway Company of Texas and the appellant, Galveston, Harrisburg & San Antonio Railway Company, for damages arising out of a cattle shipment from Big Lake, Tex., to Ft. Hancock, Tex. The trial resulted in judgment for appellees against appellant, and in favor of the defendant Kansas City, Mexican & Orient Railway Company of Texas for its costs against appellees; no liability having been shown as to such defendant. The case was tried on special issues, and the findings of the jury may be summarized as follows: That the appellant was guilty of negligence in permitting the air brakes on the train carrying the shipment to become out of repair so that, in starting and stopping the train, the violent jerks thereof caused the cattle to be injured, and in causing the train to violently knock down and pile up the cattle in the ends of the cars, and in roughly handling the cattle upon their arrival at Ft.

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Hancock, in spotting the cars at the stock pens, and in unnecessarily switching the cattle around the yards at destination for about five hours, while unloading, and between the time of unloading part of the cars and the remainder of the cattle; that the reasonable market value ·of the cattle killed was $2,250, and the reasonable market value of the cattle injured was $2,000. These findings are sustained by the evidence.

Upon this verdict judgment was rendered for appellees against appellant for the sum of $4,250, from which judgment the appellant has taken this appeal.

[1] The first assignment of error presents the claim that the trial court erred in overruling appellant's first motion for continuance. The motion was based upon the absence of a material witness, and in form and manner seems to be in compliance with the statutory requirements, and therefore it is claimed by appellant that the motion should have been granted as a matter of right.

We are of the opinion that this contention should be denied, and that the question of granting or overruling the motion was a matter within the sound discretion· of the trial court. Gulf, Colorado & Santa Fé Ry. Co. v. Brooks, 63 Tex. Civ. App. 231, 132 S. W. 95; Texas Ry. v. Hall, 83 Tex. 675, 19 S. W. 121; Railway v. Robertson, 103 S. W. 443; Railway v. Woolum, 84 Tex. 570, 19 S. W. 782; Railway v. Wright, 47 S. W. 56; Railway v. Walker, 76 S. W. 228; Baldessore v. Stephanes, 27 Tex. 455.

The motion is very lengthy, and we will not attempt to set out the details of same. It appears therefrom, however, that it was claimed that the testimony of the witness J. B. Bean was desired to refute appellees' claim that the cattle were roughly handled while at Ft. Hancock and while being unloaded, and to establish that the cattle were thin and in poor condition, and that the extra switching and delay at Ft. Hancock in unloading the cattle was due to the unusual request of appellees that the dry cattle should be first unloaded, and not in the order in which the cars first came for spotting at the chutes in the unloading pens; that the witness was an experienced cattle man and familiar with shipping cattle, and a disinterested witness.

It appears that interrogatories were propounded to this witness and to other witnesses by appellees on February 18, 1918, and crossed by appellant's counsel, and commission issued on February 25, 1918; that the depositions of two of these witnesses were returned into court March 4, 1918, but, for some unknown and unexcused reason, the commission was not executed as to the witness Bean; that the appellant had arranged for the personal attendance of. the witness at the trial of the case, but that, because of illness in his family, he was unable to appear

211 S.W.—17

at the trial. Appellant's counsel, who made this affidavit, also showed that he was in charge of the defense of the case, and that, when he crossed the interrogatories to Bean, he did not know what his testimony would be, and did not know the facts, because he had not received the investigation papers from the claim agent; and that he received his first information to this effect from the claim agent on March 2, 1918.

To the motion is also attached the affidavit of the claim agent to the effect that he had obtained a statement from the witness Bean that he would testify substantially as indicated in the motion, but it does not state when he obtained such statement. The claim agent further swore that he was unable to place the facts before appellant's counsel prior to March 2d, because he was engaged in the investigation of other matters, and especially had for a month prior to that date been engaged in investigating and attending the trial of a case against appellant at Alpine, Tex.; that, when he learned this case was set. for March 6th, he immediately began to notify the witnesses for appellant to attend the trial, and then learned of the illness in the family of witness Bean, who reported that he would not be able to attend, but was willing to report at a later time, or give his deposition; and that the witness Bean had, at the request of plaintiff's attorneys, gone to El Paso to give his deposition there in response to the interrogatories heretofore mentioned.

The cross-interrogatories to this witness fairly disclosed that appellant's counsel did not know at the time that he would testify to the facts claimed in the motion for continuance.

[2] The statute on continuance requires not only that due diligence should be alleged in the motion, but that it must show the diligence used. In this case it appears that plaintiff's original petition was filed on December 3, 1917, more than three months prior to the trial, and the interrogatories propounded by appellees to this witness were prepared and copies served upon appellant's counsel under the original petition, and before the filing of the amended petition, upon which the appellees went to trial. The interrogatories propounded disclose that the grounds of negligence relied upon by appellees were substantially those later pleaded and found by the jury. It is also shown in the record by the testimony of appellant's local agent at Ft. Hancock that the witness Bean was there on the night the cattle were unloaded at that place, and that, at the special instance and request of the local agent, Mr. Bean checked up the cattle that were killed and injured, and that he made a check of the cattle that were buried, which verified Mr. Bean's check. It is apparent that, by the use of reasonable diligence, the

agents and representatives of appellant could have ascertained what his testimony would be as to the issues in dispute in this case long prior to the time that the cross-interrogatories we're propounded to him; and no excuse is offered for not taking his deposition in the cause. Appellant had ample time in which to take the deposition between the filing of the suit and the date of trial, but made no attempt to do so until and except through the filing of cross-interrogatories, only a little over a week before the trial. This, together with the fact that the motion does not disclose when the claim agent of appellant received the statement from the witness Bean as to what his testimony would be, we think, relegated the question of granting or refusing the continuance to the sound discretion of the court.

[3] It is also pointed out by appellees that, according to the statements in the motion as to the testimony which Bean would give, it would, if correct, be in direct conflict with the testimony given by the conductor in charge of the train, who directed its movements, and that therefore the testimony of Bean, if it had been given as expected by appellant, would have been of no value to appellant.

Under all the circumstances, we do not think the trial court abused his discretion in refusing the motion, and for this reason the assignment is overruled.

[4] The second assignment of error asserts that the court committed material and prejudicial error in denying and overruling appellant's motion to suppress the deposition of the witness A. I. Boyd; and the point made in the proposition thereunder is that the statute governing the taking of depositions was not followed, in that the notice served upon appellant did not give the residence of the witness. It appears that the direct interrogatories propounded by counsel for appellees to this witness were accompanied with the notice of intention to apply "for a commission to take the answers of A. I. Boyd, J. B. Bean, and Saviano Apodaca, of El Paso county, Tex.," and the precept served on appellant, after naming said witnesses, stated, "who reside in the county of El Paso, in the state of Texas." The deposition of Boyd was taken in El Paso county, where he was actually found. The statute (article 3650, Revised Statutes) provides that—

"The notice shall state the name and residence of the witness, or the place where he is to be found, and the suit in which the deposition is to be used."

But it is claimed by appellant that the witness Boyd in fact lived in Hudspeth county, and was only temporarily at El Paso when his deposition was taken. Granting this to be true, we are of the opinion that the notice and precept were in substantial compliance with the statute, and that no reversible error has been shown. There is not a pretense of claim in the brief or record that appellant was in any wise injured or prejudiced by this matter. The assignment is overruled.

[5, 6] The third, fourth, fifth, and sixth assignments of error complain of the alleged error in the charge of the court in submitting special issue No. 1 to the jury, because it is claimed that each subdivision of the first special issue was upon the weight of the evidence, assumed the existence of the facts stated therein, and was prejudicial to appellant. These assignments all present the same point, and will be considered together.

Special issue No. 1 was as follows:

"First. Were the agents and employés of the defendant Galveston, Harrisburg & San Antonio Railway Company guilty of negligence either:

"(1) In permitting the air brakes on the train on which plaintiffs' cattle were being transported to become out of repair so that in starting and stopping said train such violent jerks thereof would be made that it would cause plaintiffs' cattle to be knocked down and piled up in the ends of the cars; or

"(2) In causing the train on which plaintiffs' cattle were being transported to give such violent jerks in starting and stopping as to cause plaintiffs' cattle to be knocked down and piled up in the ends of the cars; or

"(3) In so roughly handling plaintiffs' cattle when they had arrived at Ft. Hancock, in spotting the cars at the stock pens, that the cattle in the cars would be knocked down and caused to trample and bruise each other, and in some instances to be piled in one end of said cars on top of each other; or

"(4) In unnecessarily switching said cattle around in the yards at Ft. Hancock for about five hours while the same were being unloaded, and between the time after unloading about 13 cars thereof and unloading the remainder of said cattle?

"Definition and instructions bearing upon the above (first) issue submitted to you:

"'Negligence' means that failure to exercise ordinary care. 'Ordinary care' means the doing of that which an ordinarily prudent man would do under the same or similar circumstances, or not doing that which under the same or similar circumstances an ordinarily prudent man would not do.

"It was the duty of the defendant Galveston, Harrisburg & San Antonio Railway Company to exercise ordinary care in the hauling of plaintiffs' cattle and in switching and spotting them at the pens at Ft. Hancock, and if you find from a preponderance of the testimony that there was a failure to use ordinary care in any one or more of the four particulars above set out, then you will answer this question 'Yes;' otherwise you will answer it 'No.'"

Standing alone and critically considered, this portion of the charge might be subject to the objections urged, but, at the request of appellant, the court also gave in charge to the jury the following special charge:

"Unless you find and believe from a preponderance of the evidence submitted to you in this case that the defendant G., H. & S. A. Ry. Co. negligently permitted the train conveying the cattle from Valentine to Ft. Hancock to be overloaded and the air brakes on the train to become out of repair or that the engineer and operatives in charge of the train negligently caused same to give violent jerks in starting and stopping en route from Valentine to Ft. Hancock, or that the engineer or operatives of said train negligently roughly handled the cars in spotting them or in switching them around at Ft. Hancock, then it will be your duty to answer 'No' to special issue No. 1."

In determining the meaning and effect of a charge of the court, the charge should be taken as a whole, and, when so regarded, we think it is not subject to the criticisms involved in these assignments. The charge was in practically the language of the pleadings of the plaintiffs, and each of the particulars covered in special issue No. 1 was substantially presented by special charge No. 1, quoted above, and given at the request of appellant. When considered in connection with this special charge, special issue No. 1 is not fairly open to the objection that it was upon the weight of the evidence, or assumed the existence of the particular facts, and, in our opinion, it is clear that it was not reasonably calculated to mislead or confuse the jury. We might add that the form and manner of the special charge requested by appellant and given by the court does not differ greatly from special issue No. 1 as framed by the court, and would seem to be subject to the same objections, if any there are. If so, and there was error in special issue No. 1, it would be regarded as invited error, and appellant could not complain.

Being of the opinion that there is no merit in the four last-named assignments, they are each overruled.

[7] Appellant's seventh assignment of error complains of the court's definition of "negligence," which has been quoted above in setting out special issue No. 1, because it is claimed that the definition of "ordinary care" is contradictory, uncertain, meaningless, and confusing to the jury. The definitions which are assailed are as follows:

" 'Negligence' means that failure to exercise ordinary care. 'Ordinary care' means the doing of that which an ordinarily prudent man would do under the same or similar circumstances, or not doing that which under the same or similar circumstances an ordinarily prudent man would not do."

We are unable to perceive the force of the objections to this phase of the charge. It might be admitted that the definitions are not happily phrased, but it must be remembered that the courts do not always agree on the proper definition of negligence. There are several approved definitions, either of which might have been used to better advantage by the trial court, but we cannot say that the charge as given is defective or erroneous—certainly not as against the objections urged. Appellant claims that the effect of this charge was to make defendant liable in any event, saying:

"If we did what an ordinarily prudent man would not do, we would be guilty of negligence in failing to exercise ordinary care; if we did not do what an ordinarily prudent man would not do under the same or similar circumstances, we would still be guilty of negligence in failing to use ordinary care."

We think counsel for appellant has misconceived the meaning and effect of the charge, and probably this is due to his having confused the definition of "negligence" with the definition of "ordinary care." It will be noted that the court first defines "negligence" as the failure to exercise ordinary care; and then, in effect, defines "ordinary care" as the doing of that which an ordinarily prudent person would do under the same or similar circumstances, or the refraining from doing what an ordinarily prudent person under the same or similar circumstances would have refrained from doing. In spite of the awkwardness in constructing the sentence, it is clear to our minds that the court gave a substantially correct and, when justly considered, a clear definition.

The seventh assignment will be overruled.

[8] The eighth, ninth, tenth, eleventh, and twelfth assignments of error complain of the manner in which the court charged the jury in the second, third, fourth, fifth, and sixth special issues; the objection against each being that, as submitted, these charges assumed the facts and were upon the weight of the evidence, and prejudicial to appellant.

The second special issue was submitted in this form:

"Do you find from a preponderance of the testimony that any of the plaintiffs' cattle died as the direct and proximate result of such negligence?"

The other special issues here attacked were very similar in form, and related to the question whether any of appellees' cattle died or were injured as the result of "such negligence," and the market value of the cattle killed, and the difference in market value of the cattle injured.

We do not deem it necessary to discuss these assignments, as they are clearly without merit. No question of negligence was involved in these particular issues, but all questions of negligence were submitted in special issue No. 1, and the questions we are now considering were required to be answered by the jury only in the event they answered question No. 1 in the affirmative. Having answered such question "Yes," the jury had found appellant guilty of negligence; and the jury were told that, if they

answered the first question "No," they need not answer the remaining questions. The four special issues we are discussing have only to do with the number of cattle killed and injured and the amount of damages; and the jury were plainly informed by the court that, unless they found under the first issue that defendant was negligent, they must not answer these questions. Therefore, it was not error to assume the existence of negligence, if it was assumed, in questions Nos. 2 to 6, inclusive. The court properly prefaced each of these issues with the statement either that they need or need not answer such questions, depending upon how they had answered the preceding question.

Having concluded that no reversible error is shown by these assignments, they are all overruled.

[9, 10] The thirteenth assignment of error is to the effect that the court erred in refusing to strike out the thirty-third direct interrogatory to the witness Boyd and his answer thereto, on the ground that the same involved the opinion or conclusion of the witness. The question and answer objected to are as follows:

"Q. What, if any, was the reason assigned by the train crew for the rough handling of the cattle in spotting the cars? A. The train crew seemed to attribute the rough handling of the train to inefficiency or lack of interest on the part of the engineer."

The bill of exception seems to show that this question and answer were read to the jury, but, under the statement of facts approved by the court, it appears that this question and answer were not read to the jury. In this state of the record, we do not think the assignment should be considered. However, we do not think any reversible error has been shown, and the assignment will be overruled.

The fourteenth to the nineteenth assignments of error, inclusive, are grouped in appellant's brief, and appellees object to the consideration of same, because improperly grouped, and because the statement under each such assignment is not in accordance with the rules of the court; but we have decided to consider the assignments on their merits.

[11] The fourteenth assignment complains of the error of the trial court in admitting the twenty-eighth direct interrogatory to the witness Boyd and his answer thereto, and the proposition thereunder urges that any statement made by the brakeman as to why the engineer was handling the train roughly would be but an opinion or conclusion of the witness, and would not be binding upon the defendant. The question and answer were as follows:

"Q. If you have stated that the cattle were roughly handled at Ft. Hancock, then state whether or not you complained about this to the train crew, or any members of it? A. I did complain of this to the conductor and the brakeman."

The answer to this question does not seem to be covered by the proposition or statement under this assignment, in that it does not appear that the witness testified to any statement by the brakeman in answering such question. Furthermore, we can see no error in the mere statement that the witness complained to the conductor and the brakeman. Therefore the fourteenth assignment is overruled.

[12] The fifteenth assignment complains of the admission of the twenty-ninth direct interrogatory and the answer of the witness Boyd and the same proposition is made as under the fourteenth assignment. The question was:

"Q. Did you ask them to handle the cattle with more care or not? A. I asked the conductor to see if it was possible to get the engineer to spot the cars with more care, as that way of handling cattle would result in great loss to the owners of the cattle."

Here, too, it seems the question and answer did not involve any statement by the brakeman, and therefore did not fall within the proposition made under this assignment. Moreover, we are of the opinion that the question and answer were not subject to the objections made, and this assignment will be overruled.

The sixteenth assignment relates to the same question and answer, with the same objection made in the proposition thereunder, and we make the same disposition of it.

[13] The seventeenth, eighteenth, and nineteenth assignments attack the trial court's action in admitting the thirtieth direct interrogatory to the witness Boyd and his answer thereto, with the same proposition as under the preceding assignment. The question and answer were as follows:

"Q. State exactly what you said to the train crew, or any member of it, what request you made with respect to this, and the result of such request, if any. A. Well, as near as I can remember, I asked the conductor to see if he could get the engineer to handle these cattle with more care, and they remarked that he had been handling this train in this manner all the afternoon, and that anything they said to him seemed to make matters worse instead of better, and that was as much satisfaction as I got out of my request."

Again it does not appear from the question and answer that any statement was made by the brakeman; but, conceding that he did, it was made by one of the employés operating the train, and appears to have been part of the res gestæ, and we think was admissible. For these reasons, the seventeenth, eighteenth, and nineteenth assignments of error are overruled.

[14] The twentieth and last assignment of

error presents the point that the trial court erred in overruling appellant's objection to the thirty-second direct interrogatory to the witness L. C. Ables, on the ground that the witness had not qualified to express the opinion involved in the answer. The question and answer were as follows:

"Q. If you have stated that this shipment was roughly handled in spotting the cars, then state whether or not, based upon your observation and experience, they were spotted in the usual and customary manner employed by the railroad? A. I do not think they were spotted in the usual and customary manner."

Waiving the point that might be made that this assignment objects only to the interrogatory, and does not seem to cover the answer, we are of the opinion that there was no error in admitting both the question and the answer as against the objections urged. The witness testified that he had about 30 years' experience in raising, buying, selling, and shipping cattle, and had on numerous occasions observed shipments of cattle into Ft. Hancock and other points on the Southern Pacific. He testified to the manner in which the cattle were unloaded, and we think it was not error to permit him to testify that he did not think the cars were being spotted in the usual and customary manner. The matter of qualifying a nonexpert witness is largely within the discretion of the trial court, and we cannot say that in this instance the court abused such discretion, especially in that all the evidence upon which the court determined his qualification is not shown by a bill of exception or otherwise. Furthermore, it sufficiently appeared that witness was an experienced cattle man, handling and shipping cattle, and it was not error to permit him to give the testimony objected to. Tex. Ry. v. Crowley, 86 S. W. 342; St. Louis Ry. v. Gilliam, 166 S. W. 706; Railway Co. v. Drahn, 163 S. W. 330; Railway Co. v. Gray, 145 S. W. 729. This assignment is overruled.

In our opinion, the record does not show any reversible error, and the case will be affirmed.

Affirmed.