Argued February 15, reversed March 9, rehearing denied July 27, 1915.

# LANG v. CAMDEN IRON WORKS.*

(146 Pac. 964.)

**Master and Servant—Injury to Servant—Liability—Employers' Liability Act.**

1. An action by an employee injured by the fall of a gin pole while on a steel girder of a gas-tank in process of construction over 70 feet above ground, caused by the negligence of the employer in failing to properly fasten the guy ropes and in recklessly moving the gin pole, may be brought under Employers' Liability Act (Laws 1911, p. 16), providing for the protection and safety of employees constructing or repairing buildings, tanks and other structures.

[As to duty of master to servant, see note in 75 Am. St. Rep. 591.]

**Master and Servant—Injury to Servant—Employers' Liability Act—Construction—"Negligence."**

2. The acts of omission which constitute "negligence" under the Employers' Liability Act are failure to use care in selection and inspection of material, in erection or maintenance of scaffolding or other structure more than 20 feet from the ground, failure to provide a safety rail or other device for protection of employees on such structures, failure to cover dangerous machinery, shafts, or openings, failure to provide a system of signals, failure to use enumerated precautions as to electrical work and contrivances, failure to use every practicable device for the protection of employees in dangerous employments, and failure to use every practicable care and precaution for the safety of employees.

**Master and Servant—Injury to Servant—Employers' Liability Act—Construction—"Care and Precaution."**

3. The words "every device, care and precaution," in Employers' Liability Act, must be taken in their full sense, except as limited by the context, and the limitation must be construed merely as qualifying the word "device," and the words "care and precaution" apply not only to the safe condition of the machinery considered merely as such, but to the method of its operation.

[As to diligence required where a human life is involved, see note in 77 Am. St. Rep. 26.]

**Master and Servant—Injury to Servant—Action Under Employers' Liability Act—Pleadings.**

4. A complaint in an action for injuries to an employee on a girder of a gas-tank in process of construction, caused by the fall of a gin pole, which sets forth facts indicating that the work was haz-

---

*As to the constitutionality, application and effect of the Federal Employers' Liability Act, see note in 47 L. R. A. (N. S.) 38.

REPORTER.

ardous, that the machinery was not properly placed, and was improperly fastened, that the agents in charge of the work were negligent in the maintenance of the gin pole and in the manner of moving it, that they did not use every device, care and precaution which it was practicable for them to use to prevent injury, states a cause of action within the Employers' Liability Act.

**Master and Servant—Injury to Servant—Defective Appliances—Evidence—Admissibility.**

5. Where the complaint in an action for injuries to an employee by the fall of a gin pole did not allege that the pole was in itself an improper device, but alleged negligence in maintaining and operating it, evidence of another and better device was inadmissible.

**Evidence—Declarations—Res Gestae.**

6. In an action for injuries to an employee by the fall of a gin pole, evidence that just before the accident, and while the gin pole was being used, the foreman in immediate charge of the work directed a teamster occupying a position on the ground immediately at the foot of the structure to move to another place because the pole might fall down on the team, was admissible as a part of the *res gestae*.

**Trial—Conduct of Counsel—Reading Statutes to Jury—Action of Court.**

7. Error in permitting counsel for plaintiff suing for a personal injury to read to the jury the Employers' Liability Act was not prejudicial, where the court in its charge instructed the jury that the action was brought under the act, and explained it fully.

**Damages—Personal Injuries—Permanent Injury—Evidence.**

8. Testimony of a physician that in some respects the injury to the arm of plaintiff suing for a personal injury was permanent authorized an instruction on permanency of the injury in determining the damages.

**Evidence—Cross-examination of Expert—Personal Injuries.**

9. Where a physician testified on direct examination that plaintiff suing for personal injuries would probably have as good an arm as ever, and that the injuries were not permanent, a question on cross-examination whether the physician, aside from the pain and inconvenience, would just as soon that his arm should be in the condition in which plaintiff's arm was, was improper.

**Appeal and Error—Harmless Error—Erroneous Admission of Evidence.**

10. Where a physician testified on direct examination that plaintiff suing for personal injuries would probably have as good an arm as ever, and that the injuries were not permanent, error in allowing on cross-examination a question answered in the negative as to whether he would, aside from the pain and inconvenience, just as soon have his arm in the condition in which plaintiff's arm then was, was not prejudicial.

**Master and Servant—Injury to Servant—Issues—Instructions.**

11. Where the complaint in an action for injury to an employee by the fall of a gin pole did not charge that the pole was an improper device, but only charged that its maintenance and operation in a care-

less manner caused the injury, an instruction that the jury might consider evidence of another device or method as a means of throwing light on the question of whether the device used was a sufficient one was outside the issues, and prejudicial.

From Multnomah: THOMAS J. CLEETON, Judge.

Department 1.    Statement by MR. JUSTICE McBRIDE.

This is an action by Phillip M. Lang against the Camden Iron Works, a corporation, to recover for personal injuries.    That part of the complaint which sets forth the alleged negligent acts and omissions of defendant is as follows:

"That on or about the 26th day of May, 1913, the defendant herein was engaged in the construction of a gas-tank located on the west side of the Willamette River, about a half mile south of the town of Linnton, Oregon; that the said gas-tank, when completed, would approximate 100 feet in height and about 104 feet in diameter, and that the said tank was constructed of steel, circular in form; that there was builded around and about the said circular tank a porch or walk about 35 feet from the ground surrounding the entire structure, and fastened securely to the rim of the tank, and erected upon this was a guard or guide frame constructed of steel or iron columns about 10 or 12 feet apart, placed the one upon the top of the other, bolted or riveted together and held in place by iron girders extending from one of these columns to the other and securely fastened thereto by bolts or rivets, forming an entire framework of steel or iron round and about the said tank, and that the said frame, when completed, would be approximately 100 feet in height and surround the entire tank; * * that on or about the said 26th day of May, 1913, at about 11 o'clock A. M. of the said day, the plaintiff herein, while in the employ of the defendant, and in the discharge of his duty, was assisting in fastening the said columns and girders, and was occupying a position on the top of one of the said girders about 80 feet from the ground; * * that

the defendant, in raising the said columns and girders to the top of the said guard or guide frame, which was being so constructed as aforesaid, carelessly, negligently, and recklessly used a gin pole which was situated upon the top of the said gas-tank, and was about 80 feet in length, to the top of which was attached pulleys and riggings, through which ropes passed, and which formed a rigging by which the said columns and girders were hoisted from the ground to the top of the said guide frame to be placed; * * that the said gin pole was maintained in an upright position on the top of the said gas-tank by means of guy ropes extending from the top of said gin pole to the ground, and that the base or foot of the said gin pole was placed in a shoe about 2 feet wide by 4 feet in length, which was placed upon rollers in order that the said gin pole with the said pulleys and rigging ropes might be changed from one position to another on the top of the said gas-tank in order to raise the said columns and girders to the place where the same might be needed in the construction of the said guard or guide frame; * * that on the said 26th day of May, 1913, the said guy ropes were carelessly and negligently fastened; that the manner in which they were placed in order to secure the said beam in an upright position was unsafe and done in a careless and reckless manner; that the manner in which the gin pole was moved from one place to another was unsafe and carelessly done, and that the handling of the same was done in a careless and reckless manner, and that on account of the unsafe, careless and reckless manner in which the said gin pole was being moved and maintained in position, and operated, and in which the said guy ropes were placed and fastened, caused the said gin pole to fall, and the said rope passing through the pulley on the top, having been made fast to a girder or column, and passing over the top girder of the said guard or guide frame, where the plaintiff herein was engaged at work, caused the said rope to travel with great rapidity over the said girder, and to strike the plaintiff herein upon the right arm, breaking the bones of the said arm, mangling and

crushing the same, which caused this plaintiff great pain, and still causes him great pain, and which said injury is permanent in its character.''

All allegations of negligence having been put in issue by the answer, the case was tried, and resulted in a verdict and judgment for plaintiff, from which defendant appeals.          REVERSED.  REHEARING DENIED.

For appellant there was a brief over the names of *Mr. Benjamin B. Beekman, Messrs. Joseph & Haney* and *Mr. Edward B. Watson,* with oral arguments by *Mr. Bert E. Haney* and *Mr. Beekman.*

For respondent there was a brief with oral arguments by *Mr. Cicero M. Idleman* and *Mr. L. P. Hewitt.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. This case was evidently begun and tried by plaintiff upon the theory that his remedy was under the Employers' Liability Act (Laws 1911, pp. 16, 18), and the contention of defendant here is that the plaintiff has not brought himself within the provisions of the act, either by pleadings or proof.   The specific acts of negligence alleged or attempted to be alleged in the complaint may be briefly summarized as follows: (a) The defendant carelessly, negligently and recklessly used a gin pole in raising the columns and girders to the top of the guide frame; (b) that the guy ropes to the gin pole were carelessly and negligently fastened; (c) that the manner in which they were placed in order to secure the pole in an upright position was unsafe; (d) that they were adjusted in a careless and reckless manner; (e) that the manner in which the gin pole was moved from one place to another was careless and reck-

less; (f) that on account of the careless and reckless manner in which the gin pole was being moved and maintained in position and operated, and in which the guy ropes were placed and fastened, the pole fell and injured plaintiff. From the above summary it is apparent that there has not been pleaded any connection between the injury occurring and the fact that a gin pole was used. In other words, it is not charged that a gin pole is in itself an improper device; the cause of the accident as shown in subdivision (f), *supra,* being attributed to the careless and reckless manner in which it was moved and maintained and operated and the negligent manner in which the guy ropes were fastened. The complaint charges that the gin pole fell and plaintiff was injured because of the following negligent acts with respect to it: (1) Maintenance; (2) moving; (3) operation; (4) position of guy ropes; (5) fastening of guy ropes. We will now examine the Employers' Liability Act to ascertain whether these allegations bring plaintiff within it. The title to the act in question is as follows:

"An act providing for the protection and safety of persons engaged in the construction, repairing, alteration, or other work, upon buildings, bridges, viaducts, tanks, stacks and other structures, or engaged in any work upon or about electrical wires, or conductors or poles, or supports, or other electrical appliances or contrivances carrying a dangerous current of electricity; or about any machinery or in any dangerous occupation, and extending and defining the liability of employers in any or all acts of negligence, or for injury or death of their employees, and defining who are the agents of the employer, and declaring what shall not be a defense in actions by employees against employers, and prescribing a penalty for a violation of the law."

It may be observed that in the Laws of 1911 the words "occupation, and extending and defining the liability of employers in," occurring after the word "dangerous," at the end of line 6 in the title, do not appear; a whole line having been accidentally omitted by the printer. The quotation here is from the original act. The words "about any machinery or in any dangerous occupation, and extending and defining the liability of employers in any and all acts of negligence, or for injury or death of their employees," here employed, are sufficiently broad to include nearly any conceivable case of negligence; and, while the text of the act is perhaps more narrow than the title, it is still broad enough to include most of the injuries suffered by employees where any risk or hazard would seem naturally incident to the employment. Those sections of the act applicable to the case at bar are Sections 1 and 2:

"All owners, contractors, subcontractors, corporations or persons whatsoever, engaged in the construction, repairing, alteration, removal or painting of any building, bridge, viaduct, or other structure, or in the erection or operation of any machinery, or in the manufacture, transmission and use of electricity, or in the manufacture or use of any dangerous appliance or substance, shall see that all metal, wood, rope, glass, rubber, gutta-percha, or other material whatever, shall be carefully selected and inspected and tested so as to detect any defects, and all scaffolding, staging, false work or other temporary structure shall be constructed to bear four times the maximum weight to be sustained by said structure, and such structure shall not at any time be overloaded or overcrowded; and all scaffolding, staging or other structure more than twenty feet from the ground or floor shall be secured from swaying and provided with a strong and efficient safety rail or other contrivance, so as to prevent any person from falling

therefrom, and all dangerous machinery shall be securely covered and protected to the fullest extent that the proper operation of the machinery permits, and all shafts, wells, floor openings and similar places of danger shall be inclosed, and all machinery other than that operated by hand power shall, whenever necessary for the safety of persons employed in or about the same or for the safety of the general public, be provided with a system of communication by means of signals, so that at all times there may be prompt and efficient communication between the employees or other persons and the operator of the motive power, and in the transmission and use of electricity of a dangerous voltage full and complete insulation shall be provided at all points where the public or the employees of the owner, contractor or subcontractor transmitting or using said electricity are liable to come in contact with the wire, and dead wires shall not be mingled with live wires, nor strung upon the same support, and the arms or supports bearing live wires shall be especially designated by a color or other designation which is instantly apparent and live electrical wires carrying a dangerous voltage shall be strung at such distance from the poles or supports as to permit repairmen to freely engage in their work without danger of shock; and generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices. * * The manager, superintendent, foreman or other person in charge or control of the construction or works or operation, or any part thereof, shall be held to be the agent of the employer in all suits for damages for death or injury suffered by an employee."

The concluding clause of Section 1 is significant:

"And generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or to the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb," etc.

The situation of plaintiff on the top of one of the steel girders, 71 feet above the ground, was obviously and inherently dangerous; and while he was in this position it was just as obviously the duty of defendant or its agents to take every care and precaution practicable to see that the gin pole and its appliances were so placed, secured and operated as would minimize danger of injury to him. There was evidence tending to show that such care was not used, not only in one, but in several, respects. The ropes, guys, pulleys and fastenings of the gin pole were a part of the machinery and appliances for carrying on the work. They were fully described to the jury, and a model was exhibited on the trial. From all the evidence submitted we think the jury was justified in assuming that, if the agents of defendant had taken reasonable care to see that these ropes were maintained in a proper position and fastened securely, the accident would not have occurred. The testimony tended to show that plaintiff was upon a narrow girder at least 71 feet from the ground, and in a position where he could not protect himself if the gin pole should fall. The base of the gin pole was itself upon an iron floor constituting a compartment of the tank 35 feet from the ground, and its shaft was 80 feet high. It rested in a shoe about 4 feet in length, which was placed upon rollers of iron pipe, and was moved from place to place

by pinch bars as occasion required in the progress of the work.   There is no suggestion of any latent defects in the appliances, and there is every reason to believe that by reasonable care and caution in respect to properly placing and fastening the guy ropes the gin pole would not have fallen.   Properly braced and handled, it was a safe machine, but one requiring a high degree of care in its management and maintenance.   While perhaps its falling was not a circumstance to which the doctrine *res ipsa loquitur* should be applied to its full extent, yet the fact of its falling under the circumstances certainly furnished some evidence that proper precautions had not been used to avert the accident. We think neglect in respect to the matters mentioned brings the case within the spirit and letter of the Employers' Liability Act.

2. At the risk of repetition, and to make plain our view as to the particular acts of omission which constitute negligence under the Employers' Liability Act, they may be enumerated as follows: (a) Failure to use care in selection and inspection of materials; (b) failure to use care in erection or maintenance of scaffolding or other structure more than 20 feet from the ground; (c) failure to provide a safety rail or other device for protection of employees upon such structures; (d) failure to cover dangerous machinery, shafts or openings; (e) failure to provide a system of signals; (f) failure to use certain enumerated precautions in regard to electrical work and contrivances; (g) failure to use every practicable device for the protection of life and limb in all dangerous employments; (h) failure to use every practicable care and precaution for the safety of life and limb.

3. The words "every device, care, and precaution," used in the act, must be taken in their full sense, except

as limited by the context, and this limitation must be construed merely as qualifying the word "device." The words "care and precaution" apply not only to the safe condition of the machinery, considered merely as such, but to the method of its operation, and, if a machine safe in itself becomes a source of injury by reason of the fact that the employer or those representing him fail to use reasonable care in its operation, and thereby an injury is inflicted upon an employee not in control of its operation or management, the injury is within both the letter of the act and the mischief which it was designed to remedy.

4. It is contended that the pleading does not definitely show that it was the intent of the plaintiff to bring his action upon the statute. The complaint is somewhat loosely drawn, but it shows a state of facts which indicates that the work in which plaintiff was engaged was hazardous; that the machinery (guys, ropes, etc.) was not properly placed and was improperly fastened; that the agents in charge of the work were negligent and reckness in the maintenance of the gin pole and incautious in the manner of moving it; that they did not, in the language of the statute, "use every device, care and precaution" which it was practicable for them to use to prevent injury to the plaintiff. Where these matters appear it is not necessary for a plaintiff to expressly declare upon the statute, and this is especially true where the defendant does not demur to the complaint or move to make it more definite and certain, as is the case here: *Cederson* v. *Oregon R. & N. Co.*, 38 Or. 343 (62 Pac. 637, 63 Pac. 763). With these preliminary observations in mind we will now proceed to consider the specifications of error relied upon by defendant.

5. The first exception relates to the admission by the court of testimony tending to show that a certain other device called an "A" frame was frequently used for the same purposes as the gin pole, which was in use on the work in which plaintiff was engaged. This testimony, if it tended to prove anything, tended to show that another and better device than the gin pole should have been used; and, as there was nothing in the pleadings to indicate that a gin pole was in itself an improper device, the admission of this testimony was error.

The second exception relates to the refusal of the court to strike out the testimony above alluded to, and need not be further considered.

6. The third exception relates to the admission by the court of testimony tending to show that just before the accident, and while the gin pole was being moved, defendant's foreman, who was in immediate charge of the work, directed a teamster whose teams occupied a position on the ground immediately at the foot of the structure to remove them to another place, giving as a reason that the gin pole might fall down on the teams. This was so nearly connected with the principal transaction as to form a part of the *res gestae,* and its admission was not error.

7. The fifth exception relates to the failure of the court to prohibit counsel for plaintiff from reading Section 1 of the Employers' Liability Act to the jury. The reading of the act was probably improper; but, as the court in its charge instructed the jury that this action was brought under that act, and explained it fully to the jury, it does not appear that any injury to defendant resulted from the action objected to. The sixth exception relates to the same matter.

The seventh exception relates to the instruction of the court in relation to the duties of an employer under the liability act. It is practically a summing up of the provisions of the act, and the objection was evidently based upon the theory that the complaint failed to disclose a statutory liability. We find no error in this instruction.

We find no defect in the eighth, ninth, tenth, eleventh, twelfth, thirteenth and fourteenth instructions, objected to by defendant. The objections to them are all based upon the same theory of the law as the seventh instruction mentioned above.

8. The fifteenth exception is to the following instruction:

"If your verdict be for the plaintiff, in estimating the damages you shall take into consideration the nature and extent of the plaintiff's injury, its probable permanency, the pain and suffering which the plaintiff has endured and will endure hereafter, if any, the effect that the injury may have upon the earning power of the plaintiff, the loss of wages which the plaintiff has sustained by reason of the injury complained of, and any results or effects which are shown by the evidence to follow as the direct and proximate result of the injury which the plaintiff has sustained."

The objection to this instruction goes to that portion of it referring to the possible permanency of the injury; the defendant's counsel insisting that there was no evidence that the injury might be permanent. Dr. Walker, a witness for plaintiff, testified positively that in some respects the injury to the arm was permanent, and this testimony was sufficient to authorize the instruction.

9, 10. Upon cross-examination of Dr. Tucker, a witness for defendant, who had testified on direct examination that plaintiff would probably have as good

an arm as ever, and that the injuries were not per-
manent, plaintiff's counsel, over defendant's objection,
asked him this question:

"Then, as I understand you, Doctor, aside from the
pain and inconvenience you might suffer, that you
would just as soon that your arm was in the condition
that his is as to be in the condition you have it now?"

The witness replied: "No, sir; I would not." The
court should have sustained the objection to this ques-
tion; but, as the answer was in line with the doctor's
principal testimony, which indicated that plaintiff's
arm had not yet entirely recovered, it is difficult to
see how it could have prejudiced defendant's case.

11. The court erred in instructing the jury that it
might consider evidence of another device or method
as a means of throwing light upon the question as to
whether the device used was a sufficient one. This
was practically saying to the jury that they might com-
pare the "A" frame device mentioned in the testi-
mony with the gin pole mentioned in the complaint,
with a view of determining whether a gin pole was a
proper device to use in the work. As the complaint
does not charge that the gin pole was an improper
device, but only that its maintenance and operation
in a careless and reckless manner caused the injury,
this instruction was wholly outside the issues and
highly prejudicial. Under our Constitution the jury
is the exclusive judge of the facts, and its findings are
not, as a rule, reviewable, but, as we have frequently
said, no good verdict can be predicated upon a wrong
instruction. The law is the yardstick by which the
jury is to measure the testimony, and if the yardstick
is too short or too long, the final measurement is likely
to be erroneous. In this case the pleadings were some-
what indefinite, and the counsel, in their zeal for their

client, somewhat reckless in bringing doubtful proposi-
tions into the case; and, while in most respects the
learned circuit judge laid down the law properly, yet
in the respect indicated there was error to the manifest
injury of defendant.

The judgment will be reversed and a new trial
granted.                REVERSED.   REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT
and MR. JUSTICE BENSON concur.