Argued June 7, affirmed July 20, 1915.

## KVESET *v.* GRACE & CO.

(150 Pac. 281.)

**Master and Servant—Injuries to Servant—Defenses.**

1. Where plaintiff, a stevedore, was hurt in doing work which involved the use of machinery, his cause of action comes within the Employers' Liability Act (Gen. Laws 1911, c. 3), and the defenses of assumption of risk and of negligence of a fellow-servant cannot be urged, nor will plaintiff's own contributory negligence completely bar recovery.

[As to assumption of risk under Federal Employers' Liability Act, see note in Ann. Cas. 1915B, 481.]

**Damages—Instructions—Validity.**

2. An instruction that the jury should disregard any feelings of sympathy because of plaintiff's injuries, but that, if plaintiff had a good cause of action, the jury should not steel themselves not to be sympathetic, it being the duty of the jury to exercise their hearts as well as brains, is erroneous, practically directing verdict according to the jury's sympathies.

**Appeal and Error—Review—Harmless Error.**

3. Under Article VII, Section 3, of the Constitution, it is the duty of the Supreme Court, when the transcript on appeal contains all the proceedings below, to examine the record and determine whether an error was so harmful as to require reversal.

Appeal and Error—Damages—Personal Injuries—Measure.
4.  Where plaintiff suffered a Pott's fracture of the ankle, which
in the consensus of medical opinion would be permanent, and it ap-
peared that plaintiff could do very little walking on the injured leg
nearly a year after the accident, and that before he had been earning
at least $4.50 a day as a stevedore, an award of $3,100 cannot be held
excessive; hence an instruction that the jury should use their hearts
as well as their minds in assessing damages was not prejudicial.

From Multnomah: HENRY E. McGINN, Judge.

Department 2.    Statement by MR. CHIEF JUSTICE
MOORE.

This is an action by Harry L. Kveset against W. R.
Grace & Company, a corporation, and Fred Miller, to
recover damages for personal injury.   The facts are
that on September 1, 1913, the plaintiff, Harry L.
Kveset, was employed by the defendant W. R. Grace
& Co., a corporation, and with others was engaged at
St. Johns, Oregon, in discharging lumber from a ship
by means of derricks having tackle which was oper-
ated by machinery.   The vessel's hatchways were so
large that there were placed across each of them two
heavy steel beams, called strongbacks, to support the
hatches.   Most of the deck-load having been taken off,
the covering of hatchway No. 3 was removed, and the
strongbacks were withdrawn and placed by the de-
fendant's foreman on timbers, but they were not
secured in any manner.   As the plaintiff was working
near this hatchway, the steel beams, probably moved
gradually by the vibrations of the ship resulting from
the operation of the derrick machinery, fell upon his
left ankle, breaking near that joint the tibia in two
places, and splitting and pushing back the fibula, pro-
ducing what is generally known as a Pott's fracture.
The complaint states the facts as hereinbefore detailed,
and alleges the defendant was negligent in failing to
secure the strongbacks, in consequence of which care-

lessness the plaintiff was injured, and sustained dam-
ages in specified sums which were demanded. The
answer denies the negligence charged, and sets up as
affirmative defenses the carelessness of fellow-servants,
the plaintiff's assumption of risk, and his contributory
negligence. The reply controverts the allegations of
new matter in the answer, and, the cause having been
tried, resulting in a verdict for the plaintiff in the sum
of $3,100 general damages and $219.25 special damages
for hospital dues and medical attention, and a judg-
ment given therefor, the defendant appeals.

AFFIRMED.

For appellants there was a brief over the names of
*Mr. F. C. Howell, Messrs. Wilbur, Spencer & Beckett*
and *Mr. A. L. Clark,* with an oral argument by *Mr.
Howell.*

For respondent there was a brief over the names of
*Mr. H. W. Strong, Mr. Isham N. Smith, Mr. John F.
Logan* and *Mr. H. Daniel,* with oral arguments by *Mr.
Strong* and *Mr. Smith.*

Opinion by MR. CHIEF JUSTICE MOORE.

1. The court, refusing to instruct as requested by the
defendant's counsel, told the jury, in effect, that the
defenses of assumption of risk, and of injury caused
by fellow-servants were not available to the facts in-
volved, and that the averment of contributory negli-
gence was not an absolute bar to the plaintiff's
recovery, but should be taken into account in deter-
mining the amount of his damages, if any had been
sustained by him. Exceptions were taken to the
court's action in these particulars, and it is contended
that errors were thereby committed. When the plain-

tiff was hurt, a great part of the work in which he was engaged was performed by machinery, and, this being so, his cause of action comes within the provisions of the Employers' Liability Act, and no errors were committed in charging the jury as stated: Gen. Laws Or 1911, c. 3; *Dunn* v. *Orchard Land Co.*, 68 Or. 97 (136 Pac. 872); *Lang* v. *Camden Iron Works*, 77 Or. 137 (146 Pac. 964).

2. The court gave, *inter alia,* the following instruction:

"There is a request made here to charge the jury in regard to sympathy. It says that you are to 'disregard any feeling of sympathy that you may have for the plaintiff in this case, and to base your verdict entirely upon the evidence and the instructions of the court.' Now, that is true. The law says that a man shouldn't give a verdict just because of sympathy, but, if the plaintiff has a good cause of action, you needn't steel yourselves and say, 'Here, the court said we shouldn't give him a verdict through sympathy, and I have got to get up here and steel myself and not be sympathetic.' If the man is entitled to recover, you will remember that you are ordinary men taken from the community; that you exercise your hearts as well as your brains, and you shouldn't be deterred just because somebody might charge you with being sympathetic. If the testimony shows that he has a good cause of action, and you believe from the testimony that he is entitled to recover, give him a verdict. If he isn't entitled to recover, don't give him a verdict merely because you are sorry for him."

The defendant's counsel, before the jury retired, made the following statement to the court:

"I should like an exception to the refusal of the court to give those instructions asked and not given, or as given and modified. * * I should like an exception * * to the limitation placed by the court on the instruc-

tion relative to sympathy, which was asked for by the
defendant.''

''The trial judge,'' says Mr. Justice GOSE, in *Wheeler*
v. *Hotel Stevens Co.,* 71 Wash. 142, 146 (127 Pac. 840,
842, Ann. Cas. 1914C, 576, 578), ''may, and where there
is a seeming necessity should, caution the jury not to
allow sympathy or prejudice to influence their verdict.''

To the same effect, see Blashfield's Instructions to
Juries, Section 344, where this author remarks:

''As regards the necessity of giving such instruc-
tions, there is some diversity of opinion. A request
for a caution of this nature may, of course, be refused,
if there is nothing in the circumstances of the case
which would make it proper. And authority is not
wanting for the position that it is within the court's
discretion whether such an instruction shall be given
in any case.''

An examination of the instruction complained of
will show that the use of the phrase ''just because''
was equivalent to telling the jury that sympathy for
a person injured by the alleged negligence of another
was an element to be considered in determining the
damages sustained, but not the exclusive ingredient.
The further declaration imputed to each juror, ''I have
got to get up here and steel myself and not be sympa-
thetic,'' was tantamount to a command to be com-
passionate. Telling the jury, ''You exercise your
hearts as well as your brains,'' was the same as invit-
ing their commiseration. The word ''heart,'' as used
in the language quoted, was undoubtedly employed to
represent the seat of the affections, emotions, feelings
and passions, as contradistinguished from the abode of
the intellect and the will. In the trial of causes jurors
should be admonished, when deemed necessary by the
court, to lay aside pathos and prejudice, carefully to
weigh the evidence received, and from it alone, guided

by the court's instructions, determine the issues submitted to them. Juries are not required or even expected to "exercise their hearts" in reaching a verdict, and the invitation to do so, as given in the instruction challenged, was erroneous.

3. The rule formerly prevailing in this state was that, where error appeared, prejudice would be presumed, in which case a reversal of the judgment would inevitably result, unless it was manifest that no injurious consequences arose from a misapplication of the law. In the case at bar there is attached to the bill of exceptions a copy of the entire testimony received at the trial and of the instructions that were given and those that were refused. When such a transcript has been brought up it is now necessary, under an amendment to the organic law of the state, to examine the record with care and determine whether the judgment should be affirmed notwithstanding the error: Article VII, Section 3 of the Constitution. The question to be considered is whether, from an examination of the entire testimony, it can affirmatively be said that the verdict for $3,100 is excessive by reason of any sympathy that the jury may have exercised in behalf of the plaintiff.

4. The testimony shows that the plaintiff is a longshoreman, having worked at that business 8 years prior to his injury, and for his services received $4.50 a day. If he was employed more than 9 hours in any one day, he was paid 75 cents an hour for the extra time. He was robust, and from the American Mortality Tables has an expectancy of 33 years. The plaintiff, in speaking of his injured foot, testified:

"It swells up every afternoon. * * When I work a little it swells up more."

In answer to the question, ''Does that foot affect you now?'' Kveset replied:

''Well, if I walk all day it gets weak, you know. I can walk on the level, but if I step on something round my foot turns and hurts, you know.''

Dr. B. N. Wade, who waited upon the plaintiff when he was hurt, in speaking of the injury at that time, testified:

''The outer bone was fractured just above the ankle, and it turned in an oblique direction, and the inner bone was broken, and the fracture extended down quite a little bit. That was due to the turning of the foot, somewhat.

''Q. From your examination of him recently, will you state what the condition of his foot and ankle is?

''A. There is a little swelling there yet, and it seems to come up badly evenings, and the joint is weak.

''Q. Is that ankle liable to turn on him when he walks?

''A. It is liable to turn on him when he walks, because the ligaments are torn off, and the joint is weak, and if he got any sudden twisting of this ankle it would become dislocated again.''

In alluding to the foot and ankle this witness was asked: ''You think that in its present condition that it is practically permanent?'' He answered: ''Yes, sir.''

Dr. J. G. Swenson testified that the plaintiff's foot is permanently injured. In answer to the inquiry, ''I wish you would kindly tell the jury in your own way what his present condition is, that is, of his left foot,'' the witness said:

''Why, the present condition of his left foot is one of an injured ankle on both sides, both bones, the outer and the inner, the tibia and the fibula have been fractured, resulting in a weakened ankle, an ankle that interferes with his locomotion and with his work.''

Further referring to the plaintiff and to the injury he·had received, Dr. Swenson stated upon oath:

"He hasn't the use of the ankle. It interferes with him a great deal. * * It is a severe injury to the ankle."

Dr. Ralph C. Walker who took X-ray photographs of the plaintiff's injury 3 days after he was hurt was asked: "How far are those fractures above the joint?" The witness replied:

"They are right in the joint, not above it; well, one of these breaks is about an inch above, on the fibula, and extends right down into the joint; and the one on the tibia extends into the joint.

"Q. Is that condition that you found there permanent, Doctor?

"A. Yes, sir; it is."

Dr. R. J. Marsh, as the defendant's witness, testified that 51 days after the injury he examined the plaintiff's hurt, and found that:

"He had a fracture, what was called a Pott's fracture, in the lower end of the tibia and the lower end of the fibula, the two bones of the leg."

The defendant's counsel, referring to the time of the trial, which was more than 8 months after the injury, inquired:

"Now, assuming that this man has at the present time a swelling of the ankle of one inch—there is a swelling to that extent—I will ask you whether, in your opinion, it would be reasonable to expect a swelling of that amount at this time after the break?"

The witness replied:

"Well, I think you very often see that. I would expect the swelling to go down; to have it diminished in size during the next few months. In other words, I don't believe there will be a permanent enlargement of

that amount.    It probably will always be a little larger, but not that size.''

This doctor further testified in relation to the hurt:

''There may be a little deformity, a little permanent deformity there, but I don't look for any permanent disability.''

The foregoing is a fair epitome of the testimony relating to the extent of the plaintiff's injury.    A perusal of the sworn statements of these physicians will convince any person that the hurt was severe.    In the notes to the case of *Cleveland etc. R. Co.* v. *Hadley,* 16 Ann. Cas. 1, 14, will be found many decisions determining what sums awarded by juries as damages for the fracture of one leg were not regarded as excessive verdicts.    These adjudications vary from $9,000 to $350.    One of the cases mentioned in the annotations referred to is that of *St. Louis etc. R. Co.* v. *Woolum,* 84 Tex. 570 (19 S. W. 782), where for a hurt resulting from the fracture of both bones of his right leg at the ankle joint, causing a permanent injury, attended with long suffering and making him a cripple for life, a brakeman hurt while discharging his duty was allowed $4,000, and it was held the verdict was not excessive. The hurt in that case appears to be so similar to the injury which the plaintiff herein sustained that we conclude the award of $3,100, the general damages given, shows the verdict was not excessive or induced by the erroneous charge to which reference has been made.

The jury, having retired to consider their verdict, returned for further instructions, whereupon one of their number inquired if they had authority under the demand in the complaint for judgment for general and special damages and costs and disbursements, to fix the amount of attorney's fees.    The court replied: ''You have not.''    This request for further instruc-

tions evidently did not manifest a desire to express sympathy for the plaintiff, but only to discharge a duty which the jury thought devolved upon them under the prayer for judgment as demanded in the initiatory pleading.

From an examination of a transcript of the entire testimony and the charge as given by the court, it is believed that substantial justice has been administered, and that the determination of the trial court should be upheld notwithstanding the error complained of: *Hoag v. Washington-Oregon Corp.*, 75 Or. 588 (147 Pac. 756).

It follows that the judgment should be affirmed, and it is so ordered.                          AFFIRMED.

MR. JUSTICE EAKIN concurs.

MR. JUSTICE BEAN concurs in the result.

MR. JUSTICE HARRIS delivered the following dissenting opinion.

I do not concur, for the reasons stated in dissenting from the majority opinion in *Hoag v. Washington-Oregon Corp.*, 75 Or. 588 (147 Pac. 756, 766).