Argued September 20, affirmed October 9, 1928.

GEORGE GRAMMER v. WIGGINS – MEYER STEAMSHIP CO. ET AL.

(270 Pac. 759.)

696

For appellant there was a brief over the names of *Messrs. McCamant & Thompson* and *Mr. Ralph H. King,* with an oral argument by *Mr. King.*

For respondent there was a brief over the name of *Messrs. Lord & Moulton,* with an oral argument by *Mr. Wm. P. Lord.*

BROWN, J.—■ Before passing to an analysis of the evidence, we will take up the last point raised. On this subject, we note the following clear and concise statement from 2 Thompson on Trials (2 ed.), Section 2635:

"The form of the verdict as recorded must govern, in case of any discrepancy between it and the verdict which the jury actually returned into court,—the pre-

sumption being that the jury assented to the verdict as recorded.''

This is settled law.

Again, at 25 Stan. Ency. of Proced., page 1029, appears the following valuable excerpt:

"It is the recorded verdict, not the paper returned by a jury as their verdict to which an appellate court must look to ascertain the finding of a jury. The written memorandum is not part of the record, or evidence of it after the record is made up, and in case of a variance between the verdict as written out and as entered and read by the clerk and asserted to by the jurors, the latter controls."

See, also, *State* v. *Steptoe,* 1 Mo. App. 19.

The record in the cause before us shows that the jury intended to return a verdict for plaintiff in the sum of $7,000, and that it assented to the entry of that verdict. Moreover, the verdict as recorded by the court was clearly sustained by the affidavits of a number of the jurors.

■ ■ That the affidavits of jurors will not be received to impeach their verdict has often been held by our own and other courts. See *Cline* v. *Broy,* 1 Or. 89; *Schmalz* v. *Arnwine,* 118 Or. 300 (246 Pac. 718). There is likewise a wealth of authority to the effect that the testimony of jurors will be received to sustain their verdict when assailed. See 2 Thompson on Trials (2 ed.), Section 2623, and the notes. The case of *McGlone* v. *Hauger,* 56 Ind. App. 243 (104 N. E. 116), is squarely in point; and in rendering its decision in that case the court held that, where a verdict was returned for plaintiff in the amount of "Fifteen ($1,500.00) Dollars,'' the affidavits of jurors were properly received in support of the motion for judgment. See, also, *Town of Hobart* v. *Casbon,* 81

Ind. App. 24 (142 N. E. 138), where it was held that, in view of affidavits of jurors, a verdict for plaintiff "in the sum of twenty-two fifty dollars ($2,250.00)" was properly corrected so as to read "twenty-two hundred and fifty dollars." To similar effect are *Heinkin* v. *Barbrey,* 40 Ga. 249; *West* v. *Bank of Americus,* 63 Ga. 230; *Leftwich* v. *Day,* 32 Minn. 512 (21 N. W. 731). In considering this point, we are mindful also of the general doctrine that verdicts are to be favorably construed. In view of the record and the foregoing authorities, we think the court properly overruled the motion to set aside the judgment for $7,000 and to substitute therefor a judgment for $7.

The record shows that the plaintiff, with other members of a gang of longshoremen, was employed at a common hiring hall operated by the Waterfront Employers' Association, and was directed to go to the dock of the McCormick Steamship Company for the purpose of discharging cargo from some vessel. Upon arriving at the dock, he began the work of discharging the cargo from the "David C. Meyer," a vessel owned and operated by the Wiggins-Meyer Steamship Co. For two hours, according to plaintiff, he and other longshoremen labored in discharging various kinds of wares from that steamship; but, at the direction of the boss, at 10 o'clock they proceeded to discharge a cargo of steel from that ship. The steel was bound together in bundles, each consisting of strips of metal 25 or 30 feet long, about four inches wide, and one-fourth inch thick. In unloading these bundles of steel a cargo sling was placed around each end of the bundle, the two slings were united by a common cargo hook, and the bundle was hoisted by machinery from the hold of the vessel to the dock,

where longshoremen were required in the course of their employment to detach the slings. When the metal was received on the dock it was loaded on to trucks and removed. The plaintiff was stationed on the dock for the purpose of receiving the steel when it reached the dock and freeing the hooks in order that the sling might be returned to the ship for other loads. While plaintiff, under the direction of a superior employee of defendant Wiggins-Meyer Steamship Co., was engaged in loading a truck with this metal, he heard a voice shout: "Look out!" but before he was able to remove himself from his dangerous situation he was struck in the head by a swinging cargo hook, a part of the machinery operated by the defendant. More than four hours later when consciousness returned plaintiff was in the hospital with his head packed in ice.

■ From the foregoing it is obvious that the labor which the plaintiff was performing at the time he sustained the personal injuries above set out involved the use of machinery, thus bringing his cause of action within the Employers' Liability Act: *Kveset* v. *Grace & Co.*, 77 Or. 83 (150 Pac. 281); *Lang* v. *Camden Iron Works*, 77 Or. 137 (146 Pac. 964). As bearing on these facts, let us note the following excerpt from the Employers' Liability Act:

"All machinery other than that operated by hand power shall, whenever necessary for the safety of persons employed in or about the same, or for the safety of the general public, be provided with a system of communication by means of signals, so that at all times there may be prompt and efficient communication between the employees or other persons and the operator of the motive power." Or. L., § 6785.

In short, the Employers' Liability Act is applicable to all "persons whatsoever engaged in the * * operation of any machinery." Laws 1911, p. 16. See, also, *Malloy* v. *Marshall-Wells Hdw. Co.*, 90 Or. 303 (173 Pac. 267). In that case the court held that a block and tackle used for hoisting wood through an opening in a barn floor constituted "machinery" within the meaning of the Employers' Liability Act. As to the meaning of that term, the court said:

"In *Dunn* v. *Orchard Land Co.*, 68 Or. 97, 102 (136 Pac. 872), Mr. Justice BURNETT adopts from the Encyclopedic Dictionary the following definition of machinery:

" 'A contrivance by means of which a moving power is made to act upon any body and communicate motion to it.'

"In *Corning* v. *Burden*, 15 How. (U. S.) 252, 267 (14 L. Ed. 683), Mr. Justice GRIER says:

" 'The term "machine" includes every mechanical device or combination of mechanical powers and devices to perform some function and produce a certain effect or result.' "

It is true, as asserted by the defendant, that the Employers' Liability Act imposes a liability only upon those persons engaged in or having charge of some work being performed by the employee: Or. L., § 6785.

■ Defendant earnestly contends that the plaintiff offered no proof in support of his allegation that the defendant was the owner or operator of the "David C. Meyer," or in support of the allegation that defendant was conducting the work being performed at the time plaintiff sustained his injury, or that the men engaged in supervising the work of discharging the cargo were employees of the defendant. In this

connection, let us look to the pleadings and to the evidence. The defendant admits that it employed the plaintiff, a stevedore. The stevedore testifies that he was employed at the stevedoring hiring hall; that pursuant to his employment he went to the McCormick dock on the morning of December 26, 1925, with other members of the gang employed at the same time, and commenced the discharge of a cargo from the "David C. Meyer." In its pleading the defendant not only admits the employment of plaintiff, but avers that he was engaged in unloading the cargo from the "David C. Meyer." The admission reads:

"Plaintiff and other longshoremen working upon the dock, together with the mates, officers, and members of the crew of the 'David C. Meyer,' including the winch driver at the hatch from which plaintiff was unloading cargo, were engaged in the common employment of unloading cargo from said 'David C. Meyer'; that if plaintiff's alleged accident or injuries were caused by the negligent failure to employ a system of communication by signals, or by the failure to warn the winch driver not to hoist said main line, or by the negligent hoisting of said main line, or by the negligent failure to warn plaintiff, or by the negligent failure to lower the sling load and main hook, or by any other act or omission amounting to negligence, such negligence was the negligence of a longshoreman or a mate or an officer or a member of the crew of said steamship 'David C. Meyer,' all fellow servants of plaintiff."

The record shows conclusively that the defendant was conducting the work being performed at the time plaintiff sustained his injury. For example, we refer to the undisputed testimony of one W. A. Illidge, attorney at law and adjuster, who testified that he represented the Wiggins-Meyer Steamship Co. in a

conversation with the plaintiff relating to his injuries.

■ The question as to whether this case came within the embrace of the Employers' Liability Act was submitted to the jury by the court under proper instructions, and the jury found in the affirmative. There is some testimony in the record in support of every essential allegation in the complaint; hence the facts cannot be re-examined by this court: Or. Const., Art. VII, § 3-c.

■ It is asserted that the court erred in permitting the jury to return and receive additional instructions in the absence of, and without notice to, the defendant or its attorneys. Section 144, Or. L., reads:

"After the jury have retired for deliberation, if they desire to be informed of any point of law arising in the case, they may require the officer having them in charge to conduct them into court. Upon their being brought into court, the information required shall be given in the presence of, or after notice to, the parties or their attorneys."

The only information requested by the jury when they returned into court was in reference to the preparation of the verdict. A record was made of what the court then and there said to the jury, and the defendant was allowed an exception thereto. Under this state of facts, while the proceedings of the court were technically erroneous, the error is not so substantial as to cause a reversal of the case.

■ From an examination of the entire record, it is apparent that the trial court zealously protected the rights of each party to the litigation. The defendant excepts to a number of instructions on the ground that they fail to state the law. In each instance re-

ferred to, had the particular part of the instruction objected to been read alone, the objection might have been well taken. But instructions are to be read together and taken as a whole; and when the instructions given by the trial court in this case are so read and construed, there appears no valid reason for a reversal. The judgment will be affirmed.

AFFIRMED.

BEAN and ROSSMAN, JJ., not sitting.