## BOWLES v. CAPITOL PACKING CO.
### No. 2849.

Circuit Court of Appeals, Tenth Circuit.
May 19, 1944.

David London, of Washington, D.C. (Richard H. Field, Thomas I. Emerson, Fleming James, Jr., and Morton Abrahams, all of Washington, D.C. and Max D. Melville, and Henry E. Lutz, both of Denver, Colo., on the brief), for appellant.

Philip Hornbein, of Denver, Colo. (Theodore Epstein, of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

By Regulation 169, promulgated on June 19, 1942, under authority of the Emergency Price Control Act, 56 Stat. 23, 50 U.S.C.A. Appendix, § 901 et seq., the Administrator, Office of Price Administration, established maximum prices for beef and veal carcasses, and wholesale cuts, effective July 13, 1942. Section 1364.52 of the regulation fixed the seller's maximum price for each of such commodities at the highest price actually charged by the seller for a specified per cent of the total weight volume of his sales for each of such commodities during the period beginning March 16, 1942, and ending March 28, 1942; and section 1364.58 required every seller of such products to file with the Office of Price Administration a sworn statement setting forth the maximum prices for each grade of carcasses, and wholesale cuts, as determined pursuant to such regulation. Capitol Packing Company was engaged at Denver, Colorado, in the business of slaughtering, packing, and selling at wholesale beef and veal carcasses, and wholesale cuts; and on or about July 25, 1942, it filed with the Office of Price Administration a statement certifying its maximum prices, purportedly computed in accordance with the regulation.

In September, 1942, the Administrator instituted in the United States Court for Colorado an action against the Company, in which it was alleged among other things that the prices certified in the statement were not computed and determined in accordance with the regulation, but in violation thereof, and for the purpose or with the effect of permitting the Company to sell beef carcasses and wholesale cuts at prices substantially higher than the maximum prices authorized by the regulation; and that since July 13, the Company had sold and continued to sell to wholesalers, distributors, retailers and dealers, beef carcasses and wholesale cuts at prices in excess of the maximum authorized prices. The Administrator sought an injunction

restraining the Company from continuing its sales at prices in excess of the maximum prices authorized, and requiring it to file a statement setting forth true and correct maximum prices charged during the base period. On October 9, 1942, the court, on consent of all parties and without trial or adjudication, entered a judgment enjoining the Company from selling its products at prices in excess of those authorized by the regulation, and requiring it to file forthwith a true and correct statement of its maximum prices during the base period; and on November 13, the Company filed the statement, the prices certified in it being substantially different and in most instances lower than those previously certified.

In February, 1943, the Administrator instituted in the court below this action against the Company for the recovery of treble damages under section 205(e) of the Act, supra, for sales made between August 1, 1942, and November 11, 1942, alleging that the sum sought was three times the aggregate amount by which the prices charged and received on such sales exceeded the legal maximum prices permitted by the regulation. By amended answer, the Company admitted the filing of the two statements, the latter pursuant to the consent decree, and the making of the sales but pleaded affirmatively among other things, that the prices set forth in the first statement were the true and correct ceiling prices, and denied that it had made sales in excess of the prices authorized by the regulation. When the cause came on for hearing without a jury, the Administrator announced that he had no other or further evidence to offer in proof of the claimed violations than the last statement filed by the Company. By memorandum opinion, findings of fact, and conclusion of law, the court determined that the statement had ipso facto no retroactive effect to render illegal and unlawful prices for sales made previous to the date of the filing of such statement, and that the statement was inadmissible in evidence for the purpose of establishing liability for sales made prior to the date of its filing. The action was dismissed, and the Administrator appealed.

The Act, supra, was adopted as a temporary wartime measure. Section 1(a) declares its purposes. Section 1(b) provides that it shall terminate on June 30, 1943, unless sooner ended by executive proclamation of the President or concurrent resolution of Congress, and by section 7(a) of the Inflation Control Act, 56 Stat. 765, 50 U.S.C.A.Appendix, § 967(a), it was extended one year. Section 2 empowers the Administrator to establish by regulation or order such maximum price or prices of a commodity or commodities as in his judgment will be generally fair and equitable and will effectuate the purposes of the Act. Section 4(a) forbids the sale of any commodity in violation of a regulation or order. And section 205(e) authorizes recovery of damages in the sum of $50, or treble the amount by which the consideration for which a commodity is sold exceeds the applicable maximum price, whichever is the greater.

The parties discuss at length the effect of the judgment in the former action. Where a second suit between the same parties or their privies is on the same cause of action as the first, the final judgment rendered in the former action is conclusive as to all matters actually litigated and as to every issue, claim, or defense which might have been presented. But where the later suit between the same parties or their privies is on a different cause of action, the judgment in the first action operates as an estoppel only in respect of the issues, claims, or defenses which were actually litigated and determined. Brown-Crummer Inv. Co. v. City of Purcell, Okl., 10 Cir., 128 F.2d 400. Here, the former action was one in equity to enjoin continued sales at excessive prices, and to compel the filing of a true statement of prices charged during the base period, and this action was one for the recovery of damages. The two causes of action were entirely different, and the one involved here was neither tendered nor adjudicated there. Therefore the judgment in the former action does not constitute either res judicata or estoppel.

The Company contends that the judgment in the former action operated only prospectively, not retrospectively. To this we assent. Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 882, 87 L.Ed. 1324. But the judgment and the statement filed pursuant to it were entirely separate and distinct in purpose and function. The only connection between the two was that the statement was filed in obedience to the command of the judgment. The judgment was to restrain further sales of commodities at excessive prices, and to compel the filing of the

statement. The statement was a report or return of the critical prices charged and received during the base period in March. It was to become a record in the Office of Price Administration. It was to be used as a ready yardstick for computation in determining whether prices charged and received after the regulation became effective were above the maximum prices permitted under the regulation. It was not the function of the statement to render illegal and unlawful the sales of carcasses and wholesale cuts, whether made before or after its filing. The sales themselves above the level of maximum prices charged during the base period constituted the infraction and rendered the Company liable, not the statement. And that infraction with its consequent liability accrued at the time of the making of the sales, whether before or after the filing of the statement.

■ The sales made between August 1, 1942, and November 11, 1942, which were admitted as to volume and price, and the statement, together, constituted a prima facie case that the prices charged exceeded the maximum authorized under the regulation, and under section 205(e), supra, the Company was liable for three times the amount of the excess. The court erred in holding that the statement was inadmissible and ineffective as evidence in respect of sales made prior to the date of its filing, and in dismissing the action.

■ The Government advances the contention that by filing the statement pursuant to the judgment, the Company is estopped to rely on the earlier statement or on any other prices higher than those certified by the last statement. But the Government did not plead that issue in the trial court. Estoppel must be affirmatively pleaded. The question is not open for consideration. Zeligson v. Hartman-Blair, Inc., 10 Cir., 135 F.2d 874.

■ By affirmative defense, the Company attacked the validity of Regulation 169, as applied to its business, on the ground that it was arbitrary and violated due process. That defense was stricken. Section 204(a) of the Act provides that the Emergency Court of Appeals shall have exclusive jurisdiction to set aside a regulation, order, or price schedule promulgated by the Administrator; and section 204(d) provides that judgments and orders of the Emergency Court of Appeals shall be subject to review by the

Supreme Court, and that, except as provided in the section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any regulation, order, or price schedule. These provisions are valid, and under them one who attacks a regulation of this kind is confined to the judicial review authorized, first in the Emergency Court of Appeals, and then on certiorari in the Supreme Court. Yakus v. United States, 64 S.Ct. 660; Bowles v. Willingham, 64 S.Ct. 641.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.