WELLS TRUCKWAYS, Ltd., a California
corporation, Appellant,

v.

William A. BURCH, Appellee.

No. 5557.

United States Court of Appeals
Tenth Circuit.

Aug. 8, 1957.

Rehearing Denied Sept. 12, 1957.

Francis P. O'Neill, Denver, Colo.,
(Galligan & Foley, Denver, Colo., were
with him on the brief), for appellant.

Harry H. Ruston, Denver, Colo., for
appellee.

Before BRATTON, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action in which appellee William Burch sought to recover damages from Wells Truckways, Ltd., herein called Wells, for breach of contract. The complaint alleged that on August 19, 1954, the parties entered into an agreement whereby Burch was to act as the agent of Wells in operating that certain portion of an interstate Commerce Commission permit held by Wells between Denver, Arizona and California. It was alleged that Wells breached the contract to the damage and detriment of Burch. Recovery was sought of $5,964.29 for monies due at the date of the breach of the contract and damages in the sum of $800,200. Wells filed an answer denying that it had breached the contract, and further alleged that it lawfully terminated the contract and that Burch was estopped and by way of counterclaim asked damages in the sum of $100,000. A jury trial resulted in a verdict and judgment for Burch.

The contract of August 19, 1954, in a preamble stated that Wells was engaged in the truck transportation business; that the furtherance of such operations required the services of Burch to act as agent for the operation of the vehicles between Denver and Pueblo, Colorado, Arizona and California. The contract provided that Burch was to act as such agent for Wells for a period of five years, with the option to renew the agreement for another five years if Wells was still actively engaged in the truck transportation business, and if Othal P. Wells was still the majority stockholder and in control of Wells. It placed the management of all operations pertaining to the movement of perishables over the designated route in Burch. Wells was to furnish all the insurance covering the operations. Burch was required to keep adequate and correct records of the operations of the enterprise.

Paragraph 5 of the contract provided that "If either party furnishes equipment for the movement of merchandise the charge for such equipment shall not exceed 75% of the total revenue for the haul." The net profits were to be divided equally between Wells and Burch. The contract gave each party the right of cancellation for good cause or for the violation of its terms by the other party.

Almost immediately disagreements arose between the parties and on December 1, 1954, a clarification agreement was executed, providing that all revenues received from Bos Truck Lines pursuant to interline shipments originating east of the territory served by Wells should be paid directly to Wells, without accounting to Burch therefor. Disagreements continued and on August 12, 1955, Wells, through its attorney, served notice of cancellation of the contract effective August 3, 1955.

It is contended by Wells that the court erred in failing to enter a judgment of dismissal against Burch and in favor of Wells at the conclusion of plaintiff's case. This presents the question whether Burch violated his obligations under the contract warranting Wells in terminating the contract. This is essentially a fact question which in our view was properly submitted to the jury. Wells charged that Burch breached the contract in that he caused trucks which he procured to haul merchandise to California to deviate from the established routes covered by the permit; that he violated his fiduciary relationship by organizing a separate corporation which purchased trucks and that he then made a contract with his own corporation to employ its trucks in hauling merchandise to California. It was established by evidence that some of the drivers of trucks bypassed the established route, in violation of the provision of the certificate from the Interstate Commerce Commission. But there was also evidence that this was done without the knowledge or consent of Burch and in direct viola-

tion of written instructions given by him.

■ It is further contended that Burch violated his fiduciary responsibility to Wells by renting his own trucks owned by his own corporation to be used in hauling this produce to California. The duties of an agent toward his principal's business are too well recognized to need citation of authority. Of course, he may not profit personally in any way at the expense of his principal and in violation of his trust agreement. He must at all times act in the utmost good faith, honesty and integrity. Under the contract, it was Burch's duty to obtain the trucks to transport this merchandise. There is nothing whatever in the contract which prevented him from using his own trucks, so long as the charges therefor were no more than what other trucks could be hired for. In fact, Paragraph 5 of the contract impliedly authorizes and clearly contemplates the use of equipment belonging to the parties to the contract.[1] There is nothing in the record indicating that the charges for the use of Burch's trucks, or trucks in which he had an interest, exceeded 75% of the total revenue for the haul, or that it exceeded what was regularly paid for the hire of outside trucks. Complaint is also made of the use made of trucks by Burch after they reached their destination in California. The trucks, of course, had to return to the place from which they started if they could be used again. Whenever possible, Burch obtained a return load of merchandise. Out of this he made a profit. It is contended that this profit belongs to the enterprise and should have been equally divided between him and Wells. But it is without dispute that Wells had no interest in the trucks after they reached California. Their connection with its business was then at an end. Wells testified that he was interested only in a one way operation and was not interested in what happened to the trucks after reaching California, although admitting that they had to get back to Denver if they were to be used again. Furthermore, by arrangement on Burch's part, Wells received 7½% of the gross revenue of such return loads. Without detailing all the charges and the evidence in the record, we think whether Burch violated his contract in any way or his fiduciary relationship warranting cancellation of the contract by Wells, at most, presented a jury issue which the jury resolved in Burch's favor.

■ It is contended that all evidence relating to damages was purely speculative and that, therefore, the court erred in submitting that issue to the jury. There was some evidence that some profits had been earned which had not been paid to Burch. There was also evidence of prospective damages. The evidence established that the business was prosperous while it was being operated by Burch. The amount of the earnings distributed to Wells and Burch during the period of operation was shown and they were substantial. Burch testified that the business was stabilized and that he could expect earnings to continue on at least a comparable basis; that the business had become stabilized was confirmed by the testimony of W. J. Digby, Burch's successor. He testified that the business under his operation was grossing about $15,000 per month or approximately $180,000 per year. Burch had testified that he estimated gross earnings during his eleven months operation at about $200,000 and at a net profit of 10% or $20,000 per year.

■ There was, therefore, substantial evidence from which the jury could find loss of profits. Before recovery may be had for loss of future profits, it must be established by substantial evidence that such loss will occur. But when that is once established, it is not necessary that the exact amount of such loss be ascertained. It is then necessary only that

---

1. Paragraph 5: "If either party furnishes equipment for the movement of merchandise, the total charge for such equipment shall not exceed 75% of the total revenue for the haul."

the evidence be sufficient to enable the jury to reasonably approximate the amount of such loss.[2]

The contention is also made that the court was without jurisdiction of the subject matter because all matters in issue had been adjudicated in the state court action between the same parties. This contention is predicated upon the following facts. On July 12, 1955, Burch filed an action against Wells in the District Court of Denver County, Colorado, predicated on the same contract involved in this action. In that action, Burch sought an injunction restraining Wells from interfering with his performance of the operations under the contract and requested that Wells be directed and required to perform his part of the contract. Burch also asked for a declaratory judgment and for damages. The nature of the action can best be gleaned from the prayer. Burch prayed (1) for an order restraining and enjoining the defendant and others from interfering with the performance of the plaintiff of his operations and to restrain Wells from denying to customers Burch's agency and his right to operate the business; (2) for an order requiring Wells to specifically perform in accordance with the terms of the contract; (3) for a determination and decree of the rights, powers and duties of the parties under the contract; and (4) for an order requiring Wells to reimburse Burch for his share of all expenses and charges improperly withheld and charged to said business operations.

■ A prior action between the same parties is res judicata as to all matters that were or could have been adjudicated under the pleadings.[3] The state action was not predicated on a breach of the contract or for damages

resulting from such a breach. The question of damages flowing from the breach of the contract was not an issue within the framework of the pleadings. It could not have been adjudicated. All that Burch sought in that action was an interpretation of the contract in the nature of a declaratory judgment and an order restraining Wells from interfering with his performance thereof. While the judgment of the state court does not state the grounds upon which it dismissed the action, they are obvious from the nature of the pleadings. No doubt that court dismissed the action because it had no jurisdiction or power to enter a declaratory judgment or by way of injunction to compel performance of such an executory contract. The judgment of the court dismissing that action, therefore, is not res judicata of any of the issues in this case.

■ Error is predicated on the action of the jury when the jury returned its verdict into court. After the jury had stated, in response to the court's inquiry, that it had reached a verdict, it handed the verdict to the bailiff. The foreman handed up two verdicts, one for the plaintiff for $50,000, and one for the defendant for $4,982.81. The court glanced at the two verdicts and then asked the jury to remain in their seats while it had a conference with the attorneys in its chambers. At the conclusion of this conference, the court told the jury that these two verdicts were inconsistent because in its view the counterclaim was predicated upon a breach of the contract by plaintiff, in which event plaintiff would not be entitled to recover. The court then instructed the jury with respect to this situation and asked the jury to resume its deliberations. This the

2. General Finance Corp. v. Dillon, 10 Cir., 172 F.2d 924; Kobe, Inc., v. Dempsey Pump Co., 10 Cir., 198 F.2d 416; Mountain States Tel. & Tel. Co. v. Hinchcliffe, 10 Cir., 204 F.2d 381; United States v. Griffith, Gornall & Carman, Inc., 10 Cir., 210 F.2d 11.

3. Brown-Crummer v. City of Purcell, 10 Cir., 128 F.2d 400; Bowles v. Capitol Packing Co., 10 Cir., 143 F.2d 87; Continental Oil Co. v. Jones, 10 Cir., 176 F.2d 519; Trapp v. United States, 10 Cir., 177 F.2d 1; Happy Elevator No. 2 v. Osage Const. Co., 10 Cir., 209 F.2d 459.

jury did and returned a verdict for plaintiff in the sum of $45,017.19, upon which judgment was entered.

■ It is quite obvious what the jury did. There was evidence that Burch had received funds for which he was indebted to Wells and for which no remittance had been made. What the jury obviously concluded was that Burch was entitled to $50,000, less the amount that he owed Wells. Instead of deducting this amount from the $50,000 and returning one verdict, the jury returned the two verdicts. That this is so is evidenced by the fact that when the jury returned to the jury room it reduced the former judgment of $50,000 by the exact amount it found Wells was entitled to. It need not be determined whether under the circumstances there was such inconsistency in the two verdicts so that both could not stand, as concluded by the trial court. It has been held that where two verdicts, one for the plaintiff and one for the defendant, have been returned into court, it is permissible for the court to deduct the lesser from the greater and render a corrected judgment for the difference,[4] and that where the intention of the jury is clear from the language of the verdict, the court must make the judgment conform thereto.[5] Assuming that the two verdicts were inconsistent, the intention of the jury was clear and the court was well within its discretion in refusing to enter the verdicts and directing the jury to resume its deliberations and clarify its verdict, rather than make the correction itself. Until a verdict has been received and recorded, it is not final and is subject to correction.[6]

A careful review of the entire record leads to the conclusion that no reversible error was committed and the judgment is, therefore, affirmed.

4. Creek v. Lebo Inv. Co., 97 Colo. 250, 48 P.2d 792.

5. Yeoman v. Sherry, 10 Cal.App.2d 567, 52 P.2d 555.

6. Grammer v. Wiggins-Meyer S. S. Co., 126 Ore. 694, 270 P. 759.